624 S.E.2d 906

**STATE of West Virginia, Plaintiff Below, Appellee**

v.

**Francis Anthony SANDOR, III, Defendant Below, Appellant.**

**No. 32663.**

Supreme Court of Appeals of West Virginia.

Submitted Oct. 4, 2005.

Decided Dec. 1, 2005.

**472**

Darrell V. McGraw, Jr., Attorney General, Barbara H. Allen, Managing Deputy Attorney General, Benjamin M. Mishoe, Third Year Law Student, (Practicing Under Rule 10), Charleston, for Appellee.

Karen L. Hall, Morgantown, for Appellant.

Justice STARCHER delivered the Opinion of the Court.

STARCHER, J.:

This is an appeal of a conviction for misdemeanor battery from the Circuit Court of Monongalia County.

In this case, after his arrest, and after being fully advised of his constitutional right to the assistance of counsel, the appellant chose to represent himself in magistrate court and was subsequently convicted of misdemeanor battery. The appellant appealed the magistrate court conviction to the circuit court. The circuit court did not advise the appellant of his right to counsel, and did not question the appellant's decision to exercise his right to self-representation before the circuit court. After a bench trial before the circuit court, the appellant was once again convicted of misdemeanor battery.

We are now asked to examine the circuit judge's post-trial conclusion—made in the absence of any pre-trial admonitions to or colloquies with the appellant—that the appellant knowingly, intelligently and voluntarily waived his right to representation by an attorney before the circuit court. As set forth below, we find no error in the circuit judge's determination and affirm the conviction.

## I.

### Facts & Background

On May 5, 2001, appellant Francis Anthony Sandor, III was arrested and charged with misdemeanor battery in Monongalia County, West Virginia. The arrest followed an altercation inside a convenience store in which the appellant knocked a female acquaintance to the ground and restrained her there while claiming he was making a "citizen's arrest." [1]

---

1. The appellant does not dispute that the altercation occurred: when police arrived at the convenience store, they found the appellant (who stood six feet, six inches tall and weighed 245 pounds) pinning the female (who was five feet, two inches tall and weighed 109 pounds) down. Witnesses indicated the appellant held her down for nearly fifteen minutes by placing his foot on her throat while simultaneously holding her arms.

Later that day, the appellant was arraigned in magistrate court and signed a form expressly waiving his right to counsel.[2] Subsequently, in the magistrate court proceeding, the appellant filed eight motions and one request for discovery on his own behalf. A bench trial was conducted by a magistrate on November 14, 2001, and despite the appellant's *pro se* defense, he was convicted of misdemeanor battery.

On November 19, 2001, the appellant filed paperwork with the magistrate court clerk to initiate an appeal of his case to the circuit court. Included with the paperwork that the magistrate court clerk had the appellant complete was a financial affidavit that is used to determine an accused's eligibility for public defender services.[3] This affidavit—which in Monongalia County is normally forwarded to the circuit court for determination of whether counsel should be appointed for an accused—was instead inadvertently lodged in the appellant's magistrate court file. The magistrate court file was thereafter forwarded to the circuit court on November 30, apparently with the financial affidavit still buried within.

The circuit court scheduled the trial of the appellant's case to begin on January 22, 2002. Prior to his trial, on January 17, the appellant—still acting *pro se*—filed a motion for a continuance because of "the time that would be needed to subpoena witnesses for my defense." The appellant asserted that he needed more time to prepare because he was unaware that a trial date had been scheduled, and because he had been out of town from the end of November 2001 through early January 2002. A hearing on the continuance motion was held the next day and the motion was denied. At that hearing, the appellant indicated to the circuit court that he complet-

The parties present different versions of the events leading up to the altercation. The appellant asserts that the female victim approached the appellant as he sat peacefully in a vehicle in the convenience store's parking lot and, unprovoked, struck the appellant in the face. The appellant further asserts that as the victim fled, he followed her into the store and attempted to call the police on a payphone. The appellant alleges that the victim again attacked him, causing damage to the payphone, and in response he was compelled to restrain her while awaiting the arrival of the police.

The victim suggested a different course of events. The victim apparently first met the appellant in a nearby bar when the appellant offered the victim some cocaine. The victim maintained that when she declined the appellant's proposal and revealed the appellant's cocaine use to others, the appellant became upset and began screaming epithets about the victim. The victim claimed she fled the bar in fear and walked to the convenience store. While waiting for a ride she saw the appellant ride up in a vehicle in the parking lot. The victim said that when she approached the car, the appellant grabbed her arm and tried to pull her into the car. At that point, she claimed she struck the appellant and fled back into the store to call a friend on a payphone. The appellant pursued her into the store, pulled her away from the payphone (and in the process ripped the handset off of the payphone) and pinned her to the ground.

Both the magistrate and the circuit judge appear to have rejected the appellant's version of events in favor of the victim's version.

2. The appellant does not dispute that he was fully advised of his right to counsel in magistrate court, and that he knowingly and intelligently waived that right. The magistrate court form, entitled "Initial Appearance: Rights Statements," stated in pertinent part:

> The magistrate has informed me that ... I have the right to be represented by an attorney at every further proceeding and that, if I qualify as being unable to afford to hire an attorney, one will be appointed to represent me. I understand that if I decide to represent myself, I cannot later claim that I was denied my right to be represented by an attorney.
> DEFENDANT MUST INITIAL ONE OF THE FOLLOWING THREE CHOICES:
> /s/ FSIII (a) I give up my right to have an attorney represent me.

A magistrate also signed the form, indicating that he had informed the appellant of his rights, and that the appellant had waived his right to counsel "knowingly and voluntarily."

3. The affidavit is a form allowing the accused to set forth his or her financial condition, and for the local public defender office (or, in the absence of such an office, a circuit judge) to determine if the accused is legally eligible for the appointment of counsel. The form does not specifically state, "I want an attorney."

However, the affidavit operates as a demand for counsel through the operation of *W.Va.Code*, 29–21–16(b) [1990], which states:

> All persons seeking legal representation made available under the provisions of this article [pertaining to the provisions of public defender services] shall complete the agency's financial affidavit form, which shall be considered an application for the provision of publicly funded legal representation.

ed a financial affidavit, but had done so because the magistrate clerk "had me just fill out these two papers" and that he filled out "whatever they gave me." The appellant told the circuit judge that "I filled out a pauper's affidavit just so I could get a [new trial] date."[4]

At no time—either by any other writing or by any statement—did the appellant ever affirmatively indicate to the circuit court, to the prosecutor, or to anyone else that he wished to alter his decision to proceed on the misdemeanor battery charge without the assistance of counsel. Instead, the record is replete with statements and conduct which the circuit court later found indicative of the appellant's desire to continue self-representation.[5]

Furthermore, the record indicates that the circuit court had previous experience with the appellant acting *pro se* in a criminal matter. At the same time that the appellant was representing himself in magistrate court in the misdemeanor case at bar, the record reveals that the appellant had a separate felony criminal case pending before the same circuit judge. In that separate case, he had asserted his right to self-representation. More importantly, two months before his circuit court trial on the misdemeanor battery charge, the appellant had represented himself at his trial on the felony charge and was acquitted.

4. The appellant stated to the circuit court:

> Your honor, on the finding in magistrate court, I went to their office and filled out two papers for a notice of intent to appeal, or whatever they gave me. I've got them here, as soon as I locate them.... And these—that they would be placed back in front of Magistrate Roberts to be approved. And these are the two that I filled out blank, and it was 11–19–01, and I had the problem—you know, I didn't know if he filled out in a timely manner, so I filled out a pauper's affidavit just so I could get a date.... And now I don't have it with me, but I was sent a paper. It was a copy, and the date on it was—that it had been set for 7–18. That was the understanding that I had ... that the case was set for July 18th.

5. Various statements by the appellant to the circuit court include:

> "I have a list of materials for evidence and I have—I prepared the case."
>
> "I have the case basically together. I just need some time to pull it all together."

The record indicates that the appellant was brought before the circuit judge for arraignment on a felony charge on June 8, 2001. The appellant initially advised the circuit judge that he intended to obtain counsel. Several subsequent hearings and trial dates were continued because the appellant asserted that he needed additional time to obtain counsel. The circuit court finally appointed counsel for the appellant, but the appellant rejected the attorney's appointment and thereafter proceeded *pro se.*

Trial of the felony charge was finally scheduled to begin in circuit court on November 27, 2001. The appellant appeared *pro se* at a circuit court hearing on November 19, 2001[6] and again argued for a continuance—but this time asserted only that he did not have transcripts of prior hearings and was therefore unprepared for trial. The appellant, acting *pro se,* filed and argued several other motions at the same hearing. Another hearing was held on November 26, 2001, and the appellant again addressed several motions he prepared by himself, including motions to continue the trial. The circuit judge refused to grant the appellant additional continuances. None of the appellant's motions or actions at either of these hearings indicated to the circuit judge that the appellant was seeking the assistance of counsel or that he no longer wished to continue to proceed *pro se.*

> "I have several motions that I would like to present to the court, and they're not ready. I have a rough draft on some of them[.]"
>
> "[T]he case basically depends on the credibility of two witnesses' statements, and with the West Virginia Rules of Evidence, I can attach the truthfulness with their character. And I'm referring to, I believe, 608A, 608B, 613, 609A, and those are basically the issues I was dealing with on preparing for the case."
>
> "He would have to be subpoenaed, and I would have to be able to lead him as a hostile witness because in the manner in which he testified last time."
>
> "But, anyway, I would have to lead the witness. He would have to be my witness and cross-examination wouldn't be sufficient, I feel."

6. Coincidentally, November 19, 2001 is the same day upon which the appellant completed the financial affidavit and other paperwork to begin the appeal of his magistrate court conviction to the circuit court.

A jury trial began on the appellant's felony charge in circuit court on November 27, 2001. The appellant again renewed his motion to continue, not because he had no attorney, but because he wanted more time to prepare for trial. The motion was denied. After a two-day trial, during which the appellant acted wholly without the assistance of counsel, the appellant was acquitted of the felony charge.

Thereafter the circuit court's appellate re-trial of the appellant's misdemeanor battery charge was conducted on January 22, 2002. At trial, the appellant—acting *pro se*—cross-examined all three of the prosecution's witnesses, raised an objection to the testimony of one, and moved for a judgment as a matter of law at the close of the prosecution's case, arguing that the case against him was insufficient. The appellant also testified on his own behalf, and presented a closing argument summarizing his defense and analyzing the evidence presented. At no time during this appellate trial did the appellant request the assistance of an attorney. After considering the evidence, on January 25, 2002, the circuit court entered a judgment of guilty against the appellant.

On February 4, 2002, a motion was filed by the appellant formally requesting the assistance of counsel for the appeal process. Another motion filed the same day asked the circuit judge to clarify for the appellant "why I didn't receive the Counsel requested;" attached to this motion was the financial affidavit completed by the appellant on November 19, 2001.

The circuit court immediately appointed counsel for the appellant. Several post-trial motions were filed by counsel, including a motion for a new trial alleging that the appellant had been deprived of his constitutional right to counsel. Copies of transcripts from the appellant's felony case were requested on June 14, 2002, to assist the circuit court in assessing whether the appellant had knowingly, intelligently and voluntarily proceeded without the assistance of counsel in the misdemeanor case; unfortunately, those transcripts were not produced for nearly two years.

After reviewing the record and conducting several hearings, the circuit court concluded that the appellant had completed a financial affidavit on November 19, 2001, only so he could secure a new trial date, not because he was seeking the appointment of counsel. In an order dated August 11, 2004, that denied the appellant's motion for a new trial, the circuit court stated, "The Court is convinced that the [appellant] did not complete the affidavit to obtain Court Appointed counsel, nor did the [appellant] desire Court Appointed counsel." Based upon the record in the instant case and the record in the appellant's felony case, the circuit court concluded that "the [appellant] never intended to request Court Appointed counsel and that he made a knowing, intelligent and voluntary decision to represent himself in this proceeding."

Thirty-three months after trial was held in circuit court, on October 21, 2004, the circuit court entered an order sentencing the appellant to jail for one year and ordering him to pay a fine of $100.00. The appellant was also ordered to pay restitution to the victim, and to pay all court costs and appointed attorney fees.

The appellant now appeals the circuit court's orders.

## II.

### Standard of Review

In the instant case we are called upon to consider whether the appellant knowingly, intelligently and voluntarily waived his right to counsel in his bench trial before the circuit court, after having so waived counsel in his bench trial before a magistrate.

We review a judge's decision to allow an accused to exercise his right to self-representation under an abuse of discretion standard. As we stated in Syllabus Point 1 of *State v. Powers*, 211 W.Va. 116, 563 S.E.2d 781 (2001):

> When a criminal defendant who has asserted the right of self-representation seeks to relinquish that right and utilize substitute counsel, this Court will apply an abuse of discretion standard of review to the trial court's decision on the matter.

The instant case, however, differs from *Powers* in a substantial way: the record is simply not clear whether the appellant—who had

previously asserted the right of self-representation in magistrate court—truly sought to relinquish that right in circuit court.

 Our inquiry must, therefore, include an examination of the factual record to determine whether the appellant intended to exercise his right to self-representation before the circuit court. "Whether the waiver of the right to counsel was intelligently and understandingly made is a question of fact." *State ex rel. Powers v. Boles,* 149 W.Va. 6, 9, 138 S.E.2d 159, 162 (1964). The circuit court made factual findings that the record, taken as a whole, established that the appellant intended to proceed without the assistance of counsel. "When this Court reviews challenges to the findings and conclusions of the circuit court, a two-prong deferential standard of review is applied. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard." Syllabus Point 1, *McCormick v. Allstate Ins. Co.,* 197 W.Va. 415, 475 S.E.2d 507 (1996). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Phillips v. Fox,* 193 W.Va. 657, 661, 458 S.E.2d 327, 331 (1995), *quoting, United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746, 766 (1948).

### III.

#### *Discussion*

 It has long been recognized that the right to the assistance of counsel guaranteed by the Sixth Amendment to the *Constitution of the United States,* and by Article III, Section 14 of the *West Virginia Constitution,* embodies a correlative right to waive the assistance of counsel. *See Faretta v. California,* 422 U.S. 806, 814, 95 S.Ct. 2525, 2530, 45 L.Ed.2d 562, 570 (1975) (*quoting Adams v. United States ex rel. McCann,* 317 U.S. 269, 279, 63 S.Ct. 236, 241, 87 L.Ed. 268 (1942)); Syllabus Point 7, *State v. Sheppard,* 172 W.Va. 656, 310 S.E.2d 173 (1983).

 "A person accused of a crime may waive his constitutional right to assistance of counsel ... if [such a waiver is] made intelligently and understandingly." Syllabus Point 5, *State ex rel. Powers v. Boles,* 149 W.Va. 6, 138 S.E.2d 159 (1964). In *State v. Sheppard,* 172 W.Va. 656, 310 S.E.2d 173 (W.Va.1983), we concluded that an accused could exercise his right to self-representation, but recognized that the right was subject to reasonable restrictions. As we stated in Syllabus Point 8 of *Sheppard:*

> A defendant in a criminal proceeding who is mentally competent and *sui juris,* has a constitutional right to appear and defend in person without the assistance of counsel, provided that (1) he voices his desire to represent himself in a timely and unequivocal manner; (2) he elects to do so with full knowledge and understanding of his rights and of the risks involved in self-representation; and (3) he exercises the right in a manner which does not disrupt or create undue delay at trial.

The appellant argues that the circuit court had an unconditional duty to advise the appellant, on the record, of his right to counsel in his appeal before the circuit court. Furthermore, the appellant argues that the circuit court had a duty to interrogate the appellant, on the record, to ascertain that the appellant's decision to proceed without counsel was made with full knowledge and understanding of his rights and of the risks involved with self-representation. Because the circuit court made no inquiries of the appellant, and made no attempt to advise the appellant of the perils of proceeding *pro se,* the appellant argues that his constitutional rights were violated and that his conviction in the circuit court must be reversed.

The State concedes that it is helpful and appropriate for a circuit judge to engage in such a colloquy with an accused on the record. However, the State argues that such a colloquy is not required by the State or federal *Constitution* so long as the appellant's conduct and other evidence of record make it clear that the appellant knew of his rights and of the risks but chose self-representation. We agree.

 The predominant trend among courts appears to be that when an accused decides to proceed without the assistance of counsel, trial courts should question the accused to assess whether the decision has

been made knowingly and intelligently. As we stated in *Sheppard,*

> The determination of whether an accused has knowingly and intelligently elected to proceed without the assistance of counsel depends on the facts and circumstances of the case. The test in such cases is not the wisdom of the accused's decision to represent himself or its effect upon the expeditious administration of justice, but, rather, whether the defendant is aware of the dangers of self-representation and clearly intends to waive the rights he relinquishes by electing to proceed *pro se.* To this end, the trial court is required to conduct, on the record and out of the presence of the jury, an inquiry of the defendant, informing him of his rights and of the possible consequences of self-representation.

172 W.Va. at 671, 310 S.E.2d at 188 (citations omitted). *See also,* Syllabus Point 2, *State v. Sandler,* 175 W.Va. 572, 336 S.E.2d 535 (1985) (partially quoting the above text from *Sheppard*).

■ *Sheppard* requires "a 'penetrating and comprehensive inquiry,' including an interchange with the defendant that produces more than passive 'yes' and 'no' responses." 3 Wayne R. LaFave, Jerold H. Israel & Nancy King, *Criminal Procedure* § 11.5(c) at 575 (2nd ed. 1999). The trial court's inquiry should be calculated:

1. To ascertain if the defendant is cognizant of and willing to relinquish his right to assistance of counsel.

2. To insure that the accused is aware of the nature, complexity and seriousness of the charges against him and of the possible penalties that might be imposed.

3. To warn the accused of the danger and disadvantages of self-representation. (e.g., that self-representation is almost always detrimental and that he will be subject to all the technical rules of evidence and procedure, the same as if he had been represented by counsel.)

4. To advise the defendant that he waives his right to refuse to testify by going outside the scope of argument and testifying directly to the jury.

5. To make some inquiry into the defendant's intelligence and capacity to appreciate the consequences of his decision.

*State v. Sandler,* 175 W.Va. 572, 574, 336 S.E.2d 535, 537 (1985).[7]

---

7. The *Benchbook for U.S. District Court Judges,* published by the Federal Judicial Center, provides a guide for questions a judge can ask to convey the disadvantages the defendant will likely suffer if he proceeds *pro se:*

(1) Have you ever studied law?

(2) Have you ever represented yourself in a criminal action?

(3) Do you understand that you are charged with these crimes: [state the crimes with which the defendant is charged]?

(4) Do you understand that if you are found guilty of the crime charged in Count I the court must impose an assessment of $50 and could sentence you to as many as ____ years in prison and fine you as much as $____? [Ask defendant a similar question for each crime with which he or she may be charged in the indictment or information.]

(5) Do you understand that if you are found guilty of more than one of those crimes this court can order that the sentences be served consecutively, that is, one after another?

(6) Do you understand that the U.S. Sentencing Commission has issued sentencing guidelines that will affect your sentence if you are found guilty?

(7) Do you understand that if you represent yourself, you are on your own? I cannot tell you or even advise you how you should try your case.

(8) Are you familiar with the Federal Rules of Evidence?

(9) Do you understand that the Federal Rules of Evidence govern what evidence may or may not be introduced at trial and that, in representing yourself, you must abide by those rules?

(10) Are you familiar with the Federal Rules of Criminal Procedure?

(11) Do you understand that those rules govern the way a criminal action is tried in federal court? [Then say to defendant something to this effect:]

(12) I must advise you that in my opinion a trained lawyer would defend you far better than you could defend yourself. I think it is unwise of you to try to represent yourself. You are not familiar with the law. You are not familiar with court procedure. You are not familiar with the rules of evidence. I strongly urge you not to try to represent yourself.

(13) Now, in light of the penalty that you might suffer if you are found guilty, and in light of all of the difficulties of representing yourself, do you still desire to represent yourself and to give up your right to be represented by a lawyer?

(14) Is your decision entirely voluntary?

A trial court is not, however, required to follow *Sheppard* as though it were a sacrosanct litany, and the failure to make inquiry as to any particular topic does not make a reversal of a conviction inevitable. As we have stated:

> These guidelines are not mandatory. The omission of one or more of the warnings in a particular case would not necessarily require reversal, so long as it is apparent from the record that the defendant made a truly intelligent and knowledgeable waiver of his right to counsel.

*Sandler*, 175 W.Va. at 574, 336 S.E.2d at 537.

The goal of *Sheppard* is that the accused be aware of the right to counsel and the disadvantages of proceeding *pro se*. That awareness can be established, however, without regard to any admonitions or colloquies by the court. "[B]ecause the test [for a valid waiver of the right to counsel] concerns what the accused understood rather than what the court said or understood, explanations are not required." *United States v. Kimmel*, 672 F.2d 720, 722 (9th Cir.1982).

Hence, when a colloquy regarding the accused's decision to proceed *pro se* is not reflected in the record, appellate courts may proceed to examine the totality of the circumstances of the case and the background of the accused in an attempt to assess whether the accused's decision was constitutionally fair. "In most jurisdictions, the preferred procedure as to warnings and inquiries is exactly that: appellate courts describe the procedure as the 'better' practice, but do not require that the lower courts adhere to it." 3 Wayne R. LaFave, Jerold H. Israel & Nancy King, *Criminal Procedure* § 11.5(c) at 576. As one court stated in describing its "preference" for a detailed colloquy with an accused:

> Our holding, that a specific on the record warning of the dangers and disadvantages of self-representation is not an absolute necessity in every case for a valid waiver of counsel, should in no way be interpreted as any indication that we disfavor such a policy. Exactly the opposite is true. At best, requiring appellate courts to search through voluminous records for evidence of knowledge of this type is a time-consuming effort and a waste of judicial resources. It is a waste of judicial resources not because it is a frivolous inquiry, but because it could be avoided with a relatively short and simple colloquy on the record. Indeed, such a practice would be better for all parties involved because it would both help prevent error, and it would make frivolous appeals easier to dispose of. Thus, we are hopeful that all courts will voluntarily pursue this practice and that government prosecutors will see the benefit in encouraging courts with other practices to change them.

*Meyer v. Sargent*, 854 F.2d 1110, 1115 (8th Cir.1988).[8]

---

[If the answers to the two preceding questions are yes, say something to the following effect:]

(15) I find that the defendant has knowingly and voluntarily waived his right to counsel. I therefore permit the defendant to represent himself [herself].

Benchbook § 1.02 (4th ed. 2000).

8. *See, e.g., Dallio v. Spitzer*, 343 F.3d 553, 563 (2d. Cir.2003) (rejecting any "rigid waiver formulas or scripted procedures" and emphasizing that whether an accused's waiver is knowing and intelligent depends on the "totality of the circumstances"); *Nelson v. Alabama*, 292 F.3d 1291, 1295 (11th Cir.2002) (holding "that ideally a trial court should hold a hearing to advise a criminal defendant on the dangers of proceeding *pro se*," but concluding that "failure to do so ... is not an error as a matter of law."); *United States v. Davis*, 269 F.3d 514, 518–19 (5th Cir. 2001) (noting that although court "has consistently required ... *Faretta* warnings" regarding the dangers of self-representation, there is "no sacrosanct litany for warning defendants against waiving the right to counsel," and courts must exercise discretion "[d]epending on the circumstances of the individual case."); *United States v. Lopez–Osuna*, 242 F.3d 1191, 1199 (9th Cir. 2001) (a trial judge does not need to "use a particular script" for there to be a valid waiver of the right to counsel, but rather the determination is based upon the circumstances of the individual case); *United States v. Kind*, 194 F.3d 900, 904 (8th Cir.1999) (noting that district court's failure to "specifically warn[ ] the defendant of the dangers and disadvantages of self-representation" before allowing him to proceed *pro se* was not fatal if an appellate court could discern from "entire record" that "defendant had the required knowledge from other sources"); *United States v. Hughes*, 191 F.3d 1317, 1323–24 (10th Cir.1999) (holding that waiver of counsel "may be valid absent an inquiry by the court where the surrounding facts and circumstances, including the defendant's background and conduct, demonstrate that [he] actually understood his right to counsel and the diffi-

■ Because of the constitutional origins of an accused's right to counsel, and correlative right to proceed without counsel, if the facts and circumstances in the record do not show that the accused knowingly and intelligently elected to proceed without the assistance of counsel, then reversible error has occurred unless it can be shown that the error was harmless beyond a reasonable doubt. *See* Syllabus Point 5, *State ex rel. Grob v. Blair*, 158 W.Va. 647, 214 S.E.2d 330 (1975) ("Failure to observe a constitutional right constitutes reversible error unless it can be shown that the error was harmless beyond a reasonable doubt.").

■ We therefore conclude that when an accused chooses to proceed without the assistance of counsel, the preferred procedure is for the trial court to warn the accused of the dangers and disadvantages of self-representation and to make inquiries to assess whether the accused's choice is knowing, intelligent and voluntary. In the absence of such a colloquy, a conviction may be sustained only if the totality of the record demonstrates that the accused actually understood his right to counsel, understood the difficulties of self-representation, and still knowingly and intelligently chose to exercise the right to self-representation.

■ In the instant case, after a careful review of the record, we cannot say that the circuit court erred in allowing the appellant to proceed with his circuit court appeal without the assistance of counsel.

To begin, the record clearly reflects that on May 5, 2001, the appellant was advised by a magistrate, and therefore plainly knew, that he had a right to the assistance of counsel on his misdemeanor battery charge. The record further reflects that the appellant intelligently, knowingly and voluntarily informed the magistrate that he wished to proceed without counsel. The appellant

thereafter actively participated in his magistrate court defense, albeit unsuccessfully.

Furthermore, the record does not reflect that the appellant unequivocally informed the circuit court that he had changed his initial decision, and that he wished to be represented by counsel in the circuit court. In most instances, the completion of the financial affidavit that is used to determine an accused's eligibility for public defender services constitutes "an application for the provision of publicly funded legal representation." *W.Va. Code*, 29–21–16(b). While the appellant did complete a financial affidavit, the record is clear that he did not do so because he wanted publicly–funded legal representation. When the appellant appeared *pro se* before the circuit court, he did not ask the court to rule on the application and appoint him a lawyer. Instead he told the court that he filled out the financial affidavit merely because a magistrate clerk "had me just fill out these ... papers" and because he thought that by filling out the papers he could "get a date" for a new trial. Nowhere in the record do we otherwise find any indication that the appellant indicated to the court, to the prosecutor, or to anyone else that he wished for the assistance of an attorney. Accordingly, because the appellant left the circuit court with the understanding that he wished to continue to proceed *pro se*, we cannot say on this record that the circuit court erred in allowing him to do so.

We acknowledge that the record does not contain a colloquy between the circuit court and the appellant concerning the appellant's right to counsel and right to self-representation. The perils presented by the lack of a colloquy are firmly demonstrated by the facts in this case: following the appellant's circuit court conviction, the circuit court was required to embark on a thirty-three-month review of the record in this case and the

culties of *pro se* representation and knowingly and intelligently waived his right" (internal quotation marks omitted)); *United States v. Singleton*, 107 F.3d 1091, 1097 (4th Cir.1997) (noting that counsel waiver requires "evaluating the complete profile of the defendant and the circumstances of his decision as known to the trial court at that time ... by examining the record as a whole"); *United States v. Bell*, 901 F.2d 574, 576–77 (7th Cir.1990) (expressing "strong pref-

erence" for formal waiver inquiry, but rejecting reversal "where the record as a whole demonstrates that the defendant knowingly and intentionally waived his right to counsel"); *United States v. Hafen*, 726 F.2d 21, 26 (1st Cir.1984) ("Although the practice of issuing specific warnings to defendants who wish to proceed pro se is a good way—perhaps the best way—to insure that the requirements of *Faretta* are met, it is not the *only* way.").

**480**

appellant's concurrent felony case to assess whether the appellant's decision to proceed without counsel was constitutionally acceptable. The appellant's appeal to this Court was granted exclusively because of the lack of any colloquy, and this Court has also struggled to review a sterile record to assess the appellant's understanding and motives prior to his January 2002 trial. Several minutes of pre-trial conversation by the circuit court would have obviated years of litigation.

Still, taken in its totality, the record indicates that the appellant presented the circuit court with every appearance that he stubbornly wished to proceed on his own. The appellant was brought before the circuit court on felony charges in June 2001 at the same time that the instant misdemeanor battery charge was pending. In that felony case, the appellant was repeatedly given opportunities by the circuit court to either hire counsel or to have counsel appointed on his behalf. Each time, the appellant declined counsel and, when his case finally went to trial in November 2001, he was acquitted after ably representing himself. Combined with the appellant's explicit rejection of counsel in the magistrate court when he was arrested in May 2001; his actions in filing motions and proceeding to trial in magistrate court without counsel; his failure to unequivocally indicate to the circuit court that he wanted the assistance of counsel in the circuit court; and his actions and statements before the circuit court, we cannot say that the circuit court erred in not inquiring of the appellant whether he was aware of his right to counsel, or aware of the perils of proceeding to trial without counsel.

In sum, we perceive that the appellant actually understood his right to counsel, understood the difficulties of self-representation, and still knowingly and intelligently chose to exercise the right to self-representation in this case in both the magistrate court and the circuit court. We therefore cannot say from the existing record that the appellant was deprived of any constitutional right.

### IV.

#### Conclusion

Finding no error with the appellant's conviction and sentence, we affirm the circuit court's orders of August 11, 2004 and October 21, 2004.

Affirmed.