# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 17-0723** (Mason County 14-M-AP-2)

**Paul Gregory Zuspan,**
**Defendant Below, Petitioner**

**FILED**

**June 11, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Paul Gregory Zuspan, by counsel Paul A. Knisley and Kevin W. Hughart, appeals the Circuit Court of Mason County's July 26, 2017, order denying his appeal from magistrate court following his conviction of one count of battery on an officer and two counts of obstructing/resisting an officer. The State of West Virginia, by counsel Scott E. Johnson, filed a response in support of the circuit court's order. Petitioner filed a reply. On appeal, petitioner argues that the magistrate court (1) committed plain error when it effectively denied him court-appointed counsel and did not determine if he understood the consequences of going forward without counsel; (2) erred in granting the State's motion in limine to restrict the taking of evidence to only those events that took place at the scrapyard; (3) erred in refusing to permit petitioner to examine the police officers concerning evidence petitioner believed had not been produced; and (4) showed bias toward petitioner by discussing certain issues in front of the jury and the manner in which it addressed him. Petitioner also alleges that the State committed prosecutorial misconduct when it bolstered the credibility of its witnesses.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In December of 2011, seven criminal complaints were filed against petitioner that charged him with one count of damage or destruction of public utility property, two counts of battery on an officer, two counts of assault on an officer, and two counts of obstructing/resisting an officer. These charges stemmed from an incident in which two officers stopped at a scrapyard in order to speak with petitioner regarding signs nailed to public utility poles. Upon being notified that the manner in which the signs were hung violated state law, petitioner "angrily responded" that the poles belonged to him and he "could put whatever he wanted on them." After the officers reiterated that the poles were public utility poles, petitioner became "verbally irate" and told the officers to leave his property. One officer then asked petitioner to provide his identification, which caused petitioner to become "even more belligerent" and threaten the

1

officers with a large metal bar. Petitioner was advised to put the bar down; petitioner complied, but also took a defensive posture and refused to be handcuffed. As the officers attempted to handcuff petitioner, he forcefully fought their efforts, kicked both officers in their legs, and threatened them by saying he would "take both of [them]." Petitioner was eventually taken into custody and transported to the Mason County State Police Detachment, where further physical altercations between petitioner and police were alleged to have occurred.

In December of 2013, petitioner filed a civil suit against the West Virginia State Police Department in Mason County. However, in April of 2014, petitioner's suit was dismissed, without prejudice, due to his failure to comply with statutory notice provisions.

In May of 2014, petitioner's jury trial took place in magistrate court. Prior to trial, petitioner's first court-appointed attorney filed a motion to be relieved as counsel on the ground that the attorney-client relationship had deteriorated. This motion was granted. After new counsel was appointed, petitioner asked for her to be removed because the new attorney did not keep an appointment with him and, instead, appeared for the meeting the day after their scheduled appointment. This motion was also granted. Finally, after receiving a third appointed attorney, petitioner requested that new counsel move to withdraw because of a breakdown in communication. That motion was granted, and petitioner thereafter moved to proceed without an attorney. As such, petitioner represented himself at trial. Ultimately, the jury convicted petitioner of one count of battery on an officer and both counts of obstructing/resisting an officer. The jury acquitted petitioner of the remaining counts. The magistrate thereafter sentenced petitioner to an effective sentence of six months in jail and a total of $1,143.83 in court costs.

In August of 2014, petitioner appealed his conviction to the circuit court. Ultimately, the circuit court denied petitioner's appeal. It is from the order denying and dismissing his appeal to circuit court that petitioner appeals.

To begin, petitioner argues that the magistrate court committed plain error when it effectively denied him court-appointed counsel and did not determine if he understood the consequences of going to trial without an attorney. Accordingly, we note that "[t]o trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syl. Pt. 7, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995). We further note that "[a] judge's decision to allow an accused to exercise his right to self-representation is reviewed under an abuse of discretion standard." Syl. Pt. 1, *State v. Sandor*, 218 W.Va. 469, 624 S.E.2d 906 (2005). Upon our review, we find no abuse of discretion in the magistrate's court's decision to permit petitioner to exercise his right to self-representation.

In regard to self-representation, we have held as follows:

"A defendant in a criminal proceeding who is mentally competent and *sui juris*, has a constitutional right to appear and defend in person without the assistance of counsel, provided that (1) he voices his desire to represent himself in a timely and unequivocal manner; (2) he elects to do so with full knowledge and understanding of his rights and of the risks involved in self-representation; and (3)

2

he exercises the right in a manner which does not disrupt or create undue delay at trial." Syllabus Point 8, *State v. Sheppard*, 172 W.Va. 656, 310 S.E.2d 173 (1983).

*Sandor*, 218 W.Va. at 471-72, 624 S.E.2d at 908-09, Syl. Pt. 4. Moreover,

> [w]hen an accused chooses to proceed without the assistance of counsel, the preferred procedure is for the trial court to warn the accused of the dangers and disadvantages of self-representation and to make inquiries to assess whether the accused's choice is knowing, intelligent and voluntary. In the absence of such a colloquy, a conviction may be sustained only if the totality of the record demonstrates that the accused actually understood his right to counsel, understood the difficulties of self-representation, and still knowingly and intelligently chose to exercise the right to self-representation.

*Id*. at 472, 624 S.E.2d at 909, Syl. Pt. 7. Finally, we note that "[t]he test [to determine whether an accused has knowingly and intelligently elected to proceed without the assistance of counsel is] whether the defendant is aware of the dangers of self-representation and clearly intends to waive the rights he relinquishes by electing to proceed pro se." *Id*. at 472, 624 S.E.2d at 909, Syl. Pt. 5 (quoting Syl. Pt. 2, *State v. Sandler*, 175 W.Va. 572, 336 S.E.2d 535 (1985)).

At the outset, it is important to note that petitioner does not allege that he was unaware of the dangers of self-representation. In fact, on appeal to this Court, petitioner plainly states that "[he] understood the risks of self-representation[.]" Instead, he takes issue with the level of the magistrate court's warnings concerning such dangers. According to petitioner, the magistrate court's warning that he would be required to understand how the trial proceeds and what he was allowed to do constituted an insufficient warning about the dangers of self-representation. We find, however, that the magistrate court appropriately warned petitioner of the dangers of self-representation, especially given petitioner's admission that he was aware of these dangers.

Further, the record is clear that petitioner voiced his desire to represent himself in a clear and unequivocal manner. As noted above, petitioner was appointed three separate attorneys prior to trial. With the exception of the first attorney, petitioner either moved for or joined in the motion moving for the attorney's removal. Specifically, petitioner moved, pro se, to remove his second attorney because she failed to appear for a scheduled meeting. In relation to his third attorney, the record shows that petitioner expressed a desire for that individual to be relieved from his representation. At this point, petitioner specifically motioned the magistrate court to be permitted to represent himself. In fact, in his motion, petitioner alleged that, in addition to the multiple attorneys appointed to represent him, he also sought to retain his own counsel. However, petitioner alleged that he could not find an attorney that would represent him and that no attorneys, including court-appointed counsel, would present his case "how [he] wishe[ed] it to be handled." At trial, the magistrate court discussed petitioner's decision to represent himself and indicated that, one month prior to trial, the magistrate "asked [petitioner] five separate times that day [if he] wanted to apply for court[-]appointed counsel again." Despite the magistrate court's repeated questions concerning the appointment of counsel, petitioner ultimately responded that he would represent himself. As such, it is clear that petitioner timely and unequivocally voiced

his desire to represent himself.

On appeal, petitioner argues that his express desire to represent himself was not unequivocal because he only made the decision because he "felt that he had no other choice[.]" In short, petitioner alleges that because no attorney would "do the right thing in this matter[,]" he was left with no choice but to exercise his right to self-representation. This argument is not compelling, as petitioner's motivation for exercising his right to self-representation is irrelevant to our analysis. Indeed, despite petitioner's assertion on appeal that the magistrate court "could have appointed another attorney to represent him[,]" the record is clear that it attempted to do so no less than five times prior to trial. Instead of accepting the circuit court's offer of a new appointed attorney, petitioner unequivocally chose to represent himself. Accordingly, we find that the magistrate court did not abuse its discretion in permitting petitioner to represent himself at trial.[1] As we find no error, it follows that we decline to grant petitioner relief under plain error.

Next, petitioner argues that the magistrate court erred in granting the State's motion in limine restricting the taking of evidence and testimony to the incidents that occurred at the scrapyard. According to petitioner, because the criminal complaints made reference to incidents that occurred at the Mason County State Police Detachment, the restriction on the taking of testimony violated his constitutional right to a fair trial. However, petitioner ignores the fact that in his own petition for appeal he acknowledges that the prosecutor "chose to . . . limit the trial to the crimes which had allegedly occurred" at the scrapyard. Indeed, the prosecutor specifically told the jury that petitioner "was only being charged for incidents that allegedly occurred at the scrapyard, not for incidents at the Mason County State Police Detachment[.]" Accordingly, petitioner cannot establish a violation of any constitutional right, given that he was plainly informed of the charges against him.[2] *See* U.S. Const. amend. VI (granting criminal defendants the right "to be informed of the nature and cause of the accusation"); W.Va. Const. art. III, § 14 (granting criminal defendants the right to "be fully and plainly informed of the character and cause of the accusation," and "a reasonable time to prepare for his defence").

Further, petitioner cannot establish error in the magistrate court's granting of the motion in limine. In ruling on the State's motion, the magistrate court specifically found that limiting the scope of trial to the incidents at the scrapyard would prevent confusion, especially in light of petitioner's attempts to include evidence in support of his related civil suit that was irrelevant to the issues at trial. We have held that "'[a] trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard.' Syllabus Point 4, *State v. Rodoussakis*, 204 W.Va. 58, 511 S.E.2d 469 (1998)." Syl. Pt

---

[1]Petitioner does not allege on appeal that his exercise of the right to self-representation disrupted or unduly delayed the trial. Accordingly, an analysis of this factor, as set forth in *Sandor*, is unnecessary.

[2]We further note that petitioner failed to move for a bill of particulars in regard to the prosecution's decision to limit the scope of the crimes charged to only those incidents that occurred at the scrapyard.

1, *State v. Maggard*, 232 W.Va. 55, 750 S.E.2d 271 (2013). Moreover, Rule 401 of the West Virginia Rules of Evidence provides that evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and . . . *the fact is of consequence in determining the action*." (emphasis added). Further, Rule 402 generally permits the introduction of relevant evidence. Here, there is no question that the evidence petitioner sought to introduce regarding incidents that were alleged to have occurred at the State Police Detachment was of no consequence in determining the action and, thus, irrelevant.

While the criminal complaints made reference to alleged acts at the State Police Detachment, the State nonetheless chose to limit the scope of its prosecution to the incidents at the scrap yard.[3] In analyzing this issue on appeal, the circuit court specifically addressed each count for which petitioner was tried and related them to the facts as they applied to the scrapyard. In the order on appeal, the circuit court found that: (1) "[t]he 'damage or destruction of public utility property' crime allegedly occurred at the scrapyard, as the poles in question were located in close proximity to the scrapyard[;] (2) "the two charges of 'battery on officer' . . . allegedly occurred at the scrapyard" given that petitioner "allegedly kicked both officers in their legs . . . at the scrapyard[;]" (3) "the two charges of 'assault on officer' . . . allegedly occurred at the scrapyard" given that petitioner "allegedly grabbed a large metal bar at the scrapyard and told the officers, 'I'll get you out of here[;]'" and (4) "the two charges of 'obstructing/resisting an officer' all allegedly occurred at the scrapyard" given that petitioner "allegedly fought the efforts of the officers to place him in handcuffs . . . at the scrapyard." In short, it is unclear why, exactly, petitioner would have sought to introduce evidence relating to the incident at the State Police Detachment when the State sought only to convict him upon his actions at the scrapyard. Because the magistrate court's granting of the State's motion in limine excluded irrelevant evidence, we find no error.[4]

---

[3]Petitioner additionally argues that "the magistrate court permitted the jury to deliberate on all of the alleged crimes that had been committed even though she refused to permit the [p]etitioner to present evidence" regarding the alleged incident at the State Police Detachment. He argues that "[t]his is apparent because the jury instructions and the jury verdict forms did not differentiate in the location of the alleged crimes[,]" thus depriving the jury of the "option of determining if the [p]etitioner was guilty or not guilty of each of the alleged crimes in reference to where each alleged crime had occurred. . . ." This argument is entirely without merit, as it fails to acknowledge that the magistrate court barred the introduction of evidence concerning the alleged incident at the State Police Detachment in response to the State's decision to prosecute petitioner for only his actions at the scrapyard. Accordingly, there was no evidence introduced regarding the alleged acts petitioner committed at any location other than the scrapyard upon which the jury could have based its conviction. Moreover, the jury was specifically instructed that "[t]he [c]riminal [c]omplaint against [petitioner] is not evidence of guilty" and could not be considered in reaching its verdict.

[4]In support of this assignment of error, petitioner cites to only one instance in the trial transcript where evidence of the incident at the State Police Detachment was introduced. In response to petitioner's questioning as to whether he left any marks on the officer or hurt him in

(continued . . . )

Next, petitioner argues that the magistrate court erred when it refused to permit petitioner to examine the police officers concerning evidence he believed they had in their possession but refused to produce. Specifically, petitioner alleged at trial that the officers possessed dash camera footage of the incident at the scrapyard and failed to produce the same. Importantly, this assignment of error misstates the events that took place below, as the record is clear that petitioner was permitted to inquire about the possibility of a video recording of the incident in question. Specifically, petitioner asked one of the officers about the manner in which video recorded from the dash cameras in police vehicles is archived for possible use in legal proceedings. He further asked the officer if a video recording of the incident in question was captured, but was informed that the dash camera only records when the vehicle's emergency lights are engaged. Accordingly, the officer informed petitioner that no video recording of the incident existed because the vehicle's emergency lights were not engaged and, thus, the camera was not activated. As such, it is clear that petitioner was permitted to inquire about the possibility of a video recording. While he argues that he should have been permitted to ask additional questions, we find that the circuit court did not abuse its discretion in denying this request, as the officer definitively stated that no recording existed.

To the extent that petitioner argues on appeal that the State failed to provide him with exculpatory evidence in the form of an alleged video recording of the incident, we find no error in this regard.[5] We have held as follows:

---

any way, the witness testified that petitioner left "marks on [his] arm where [petitioner] grabbed [him] at the detachment." On appeal, petitioner argues that the State failed to object to the introduction of this evidence and that the witness's testimony on this issue "opened the door" for him to ask further questions regarding the incident at the State Police Detachment. This argument is entirely without merit. Importantly, petitioner was the party that elicited the testimony of which he now complains. "The curative admissibility rule allows a party to present otherwise inadmissible evidence on an evidentiary point where an opponent has 'opened the door' by introducing similarly inadmissible evidence on the same point." Syl. Pt. 10, in part, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995). As such, we find no error in the magistrate court's decision to deny petitioner the opportunity to ask additional questions related to the incidents alleged to have occurred at the State Police Detachment after he himself elicited the testimony of which he now complains.

[5]On appeal, petitioner specifically alleges that he "moved the magistrate court to permit him to address the fact that he did not receive all of the evidence from the State and to permit him to question the officers concerning that evidence." He goes on to argue that the magistrate court refused to permit him to "examine the officers concerning the evidence which [he] believed the police officers had in their possession but refused to disclose to him." As on appeal, at trial petitioner only asserted generally that evidence was withheld from him. When addressing the issue, petitioner argued below that he should have been permitted to "bring up the evidence [he possessed] and what [the officers] have done to hide the evidence that was taken that day by them[.]" He further argued that the officers were "trying to hide material" from him. Ultimately,

(continued . . . )

There are three components of a constitutional due process violation under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and *State v. Hatfield*, 169 W.Va. 191, 286 S.E.2d 402 (1982):(1) the evidence at issue must be favorable to the defendant as exculpatory or impeachment evidence; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) the evidence must have been material, i.e., it must have prejudiced the defense at trial.

Syl. Pt. 2, *State v. Youngblood*, 221 W.Va. 20, 650 S.E.2d 119 (2007). Here, it is clear that no *Brady* violation occurred because the evidence in question never existed. In fact, petitioner admits as much in his petition for appeal, asserting that "[t]he State takes the position that the State did not have the evidence sought by the [p]etitioner, therefore, it could not be turned over to him. The State is correct in that argument." As such, we find no error.

Next, petitioner argues that the magistrate court violated Rules 2.3(A) and (B)[6] of the West Virginia Code of Judicial Conduct by telling him, in front of the jury, that he had been given the chance to have counsel, had already had three attorneys, and had made his choice to go

---

despite these general allegations, the only piece of evidence petitioner specifically argued was not provided to him was the alleged video recording of the incident in question. Accordingly, on appeal, we will address only petitioner's allegations regarding the alleged video recording.

Further, on appeal petitioner alleges that he was not permitted to question the officer regarding "whether there were videos from the state police detachment[,]" in spite of the fact that the officer "opened the door to that questioning. . . ." As addressed above, the lone instance of testimony concerning the State Police Detachment was elicited by petitioner. Thus, his argument that the officer "opened the door" to a line of question regarding the alleged failure to disclose generic evidence related to the events that transpired there is without merit. Moreover, as addressed above, evidence relating to the incident at the State Police Detachment was irrelevant to the charges for which petitioner was being tried. As such, we find no merit to petitioner's argument.

[6]Rule 2.3 states, in relevant part, as follows:

(A) A judge shall perform the duties of judicial office, including administrative duties, without bias or prejudice.

(B) A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice, or engage in harassment, including but not limited to bias, prejudice, or harassment based upon race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation, and shall not permit court staff, court officials, or others subject to the judge's direction and control to do so.

7

to trial without the assistance of counsel.[7] In short, petitioner argues that the magistrate court's repeated references to his prior attorneys evidenced a manifest bias or prejudice and constituted harassment. We do not agree.

First, it is important to note that petitioner fails to cite to any authority that establishes that a trial court's reference to a defendant's prior representation is evidence of bias or harassment. On the contrary, the record here is clear that at each instance of which petitioner now complains, the magistrate court was attempting to instruct petitioner, acting pro se, on permissible trial procedure. When petitioner was confronted with the fact that he was attempting to engage in impermissible actions, he routinely relied on the fact that, because he was not an attorney, he was unfamiliar with such procedures. In response to these excuses, the magistrate court, on more than one occasion, reminded petitioner that he chose to proceed without the assistance of any of the three previous attorneys appointed to represent him and was required to understand what was permitted of him. In the order on appeal, the circuit court succinctly described the exchanges of which petitioner now complains by pointing out that petitioner "would often argue with the magistrate when he disagreed with an adverse ruling[;] . . . would not stop talking at times when he was instructed to do so . . . and . . . would ignore the magistrate's rulings on the State's objections." The circuit court went on to find that the magistrate "would appropriately admonish [petitioner] when he was making faces, laughing, or shaking his head in front of the jury during the State's opening statements and during the State's case-in-chief."

We further agree with the circuit court's finding that petitioner "was attempting to gain the jury's sympathy when he mentioned that he was *pro se*. . . ." In fact, petitioner ignores instances in the trial transcript wherein he addresses the fact that he was previously represented by three separate attorneys. Specifically, petitioner stated, in the presence of the jury, that "[e]very lawyer [he] had has quit" and that he "had three public defenders that have all quit." Based on these statements, we agree with the circuit court that the magistrate's statements were merely an "attempt[] to clarify things for the jury when [petitioner] stat[ed] that he had three attorneys out of fairness to the State." As such, petitioner is entitled to no relief.

Finally, petitioner argues that the State committed prosecutorial misconduct when it bolstered the credibility of its witnesses and spoke about the credibility and trustworthiness of police officers during closing. Specifically, petitioner appears to take issue with the following remarks from the State's closing:

---

[7]Petitioner further argues that the magistrate court exhibited bias against him because "almost every time the [t]rial [c]ourt spoke to the [p]etitioner it was in a belligerent and condescending tone or it was with a raised voice. . . ." He goes on to allege that the magistrate "often rais[ed] her voice and yell[ed]" at him in front of the jury. We note, however, that while petitioner included a transcript of the trial, he failed to include a recording of the same. Accordingly, any allegations related to the magistrate's tone of voice or the general manner in which she spoke to petitioner are not properly preserved for appellate review.

I don't like it when people get angry with police officers. I don't like it when people swear off on them. I've had times in my life when I have needed them, if you're - - one time my little girl went missing after school, luckily she had just gone to a friend's house, but you know, it was the worst hour of my life. And during that hour the Huntington Police Department were the best friends in the world I had. So I don't like it when people make it out to where the cops are always out to get them, but they're completely innocent and the cops did nothing but attack them for no good reason. It's not been my experience, it wasn't my experience based on the testimony of the troopers here today.

However, we note that, despite the fact that petitioner based his appeal to the circuit court, in part, upon this alleged error, he did not object to the same at trial. Moreover, on appeal to this Court, petitioner failed to allege that plain error should apply to this assignment of error, as required by Rule 10(c)(3) of the West Virginia Rules of Appellate Procedure, which requires that "[i]f the issue was not presented to the lower tribunal, the assignment of error must be phrased in such a fashion as to alert the Court to the fact that plain error is asserted." In addressing allegations of prosecutorial misconduct during closing arguments to which a defendant does not object, we have held that "[i]f either the prosecutor or defense counsel believes the other has made improper remarks to the jury, a timely objection should be made coupled with a request to the court to instruct the jury to disregard the remarks." Syl. Pt. 10, *State v. Davis*, 205 W.Va. 569, 519 S.E.2d 852 (1999) (citation omitted). "Failure to make timely and proper objection to remarks of counsel made in the presence of the jury, during the trial of a case, constitutes a waiver of the right to raise the question thereafter either in the trial court or in the appellate court." *Id*. at 573, 519 S.E.2d at 856, Syl. Pt. 11 (citation omitted). Therefore, petitioner "cannot argue for the first time on appeal that the prosecutor made improper remarks during the State's . . . closing argument." *Id.* at 586, 519 S.E.2d at 869. Moreover, we have also noted that "the doctrine of plain error with regard to objectionable closing remarks is sparingly applied." *State v. Grubbs*, 178 W.Va. 811, 818, 364 S.E.2d 824, 832 (1987). Accordingly, we find petitioner is entitled to no relief in this regard.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** June 11, 2018

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

Justice Loughry, Allen H., II suspended and therefore not participating.