723 S.E.2d 851

**STATE of West Virginia, Plaintiff Below, Respondent**

v.

**Donald SURBER, Jr., Defendant Below, Petitioner.**

**No. 11–0361.**

Supreme Court of Appeals of West Virginia.

Submitted Feb. 8, 2012.

Decided Feb. 24, 2012.

---

Nicholas Forrest Colvin, Esq., Law Office of Nicholas Forrest Colvin, PLLC, Martinsburg, WV, for Petitioner.

Christopher C. Quasebarth, Esq., Deputy Prosecuting Attorney, Berkeley County Prosecuting Attorney's Office, Martinsburg, WV, for Respondent.

PER CURIAM:

This case is before this Court upon appeal of the sentencing order of the Circuit Court of Berkeley County entered on August 5, 2010. In that order, Donald Surber, Jr. (hereinafter "the petitioner") was sentenced to: life without mercy for his conviction of first degree murder; life without mercy for his conviction of kidnaping; three to fifteen years for his conviction of attempted kidnaping; one to fifteen years for his conviction of burglary; one to ten years for his conviction of destruction of property; six months for his conviction of domestic assault; and five years for his conviction of attempted escape. The petitioner's convictions resulted from his plea of guilty to the above offenses on June 25, 2010. In this appeal, the petitioner asserts that his guilty pleas were not entered intelligently, knowingly, and voluntarily. He further contends that he did not knowingly and voluntarily waive his right to counsel; that his sentence was excessive; and that he received ineffective assistance of standby counsel. Based upon the parties' briefs and arguments in this proceeding, as well as the relevant statutory and case law, this Court is of the opinion that the circuit court did not commit reversible error and, accordingly, affirms the decision below.

I.

FACTS

On June 15, 2009, the petitioner broke into the home of his ex-girlfriend, Katherine Sharp (hereinafter, "the victim"), and held her hostage, eventually stabbing and killing her during a thirty-six hour standoff with police. According to the petitioner, he and the victim had argued numerous times during the days preceding the incident. When the petitioner entered the victim's home on the day of the murder, another argument ensued. The petitioner hit the victim, who then yelled for her daughter, Torrey,[1] to call 911 for help. Torrey called 911 and was able to escape through a window. When two state police officers arrived at the home, the petitioner told them he had a gun and that he was going to kill the victim if they did not leave. The police officers then contacted the petitioner by calling the victim's cell phone. The petitioner again informed the officers that if they did not stay away that he would kill her.

At his plea hearing, the petitioner said that he tied the victim's arms and legs and put a pillowcase over her head with an intent to smother and kill her. He did not kill her at that time and explained that:

> She saw at that point I had a knife. I grabbed the knife and everything because I just got tired of the arguing and everything. I tied her up. She said that she didn't want me to stab her. She asked if she could take pills. She took a bunch of I want to say Xanax and a bunch of Ibuprofen I think it was. She had fell asleep at that point. I stabbed her.

The petitioner took responsibility for stabbing the victim stating he could have stopped at any point, but chose not to do so. He further explained at his plea hearing that as the night went on, he "tried to smother her again and [he] stomped on her chest with [his] foot" and then "drug her out of the bedroom." He said he "was competent at the time but ... was just full of so much anger" that he could not stop himself from killing the victim. He said that after the victim was already dead he "just started cutting her and slicing her up."

After being taken into custody, the petitioner cut his own wrists while in the shower. This resulted in jail staff wrapping the petitioner with a blanket and immediately transporting him to a local hospital where his wounds were treated. At the hospital, the petitioner attempted to escape and allegedly attempted to disarm a correctional officer. When the officers removed his handcuffs and shackles to allow him to get dressed, he began running down the crowded hospital hallway in an attempt to escape. He was captured after being shot in the shoulder by another officer.

Soon thereafter, attorneys Deborah Lawson and John Adams of the local public defender's office were appointed to represent the petitioner. On September 29, 2009, the petitioner sent an *ex parte* letter to the circuit court asking that he be allowed to represent himself. On October 20, 2009, the petitioner was indicted for first degree murder, kidnaping, attempted kidnaping, burglary, destruction of property, attempted escape, attempt to disarm an officer, attempted possession of a firearm by an inmate, and domestic assault.

During an April 12, 2010, bail hearing, and despite the advice of his counsel, the petitioner again told the circuit court that he wanted to represent himself and wanted to plead guilty to the charges against him. He explained that he wanted to do so because he did not want his children or the victim's children to go through further proceedings. He also indicated that his attorneys were trying to talk him out of pleading guilty. The circuit court deferred the petitioner's request to represent himself pending receipt of the petitioner's competency evaluation. The petitioner then wrote a second letter to the circuit court asking to represent himself.

At a June 25, 2010, hearing, the petitioner again moved to represent himself despite objections from his counsel. The circuit court was in possession of the psychiatric evaluation which contained a determination that the petitioner was competent and capable of accepting criminal responsibility. The circuit court engaged in a lengthy dialogue with the petitioner about his rights and heard from one of the public defenders about her efforts to advise the petitioner of his rights and the risks of self-representation. The circuit court then concluded that the petitioner was cognizant of his rights and that he knowingly, intelligently, and voluntarily chose to represent himself. The circuit court then appointed both public defenders to serve as standby counsel to answer any questions the petitioner might have throughout the legal proceedings against him.

During this same hearing, the petitioner advised the circuit court that he wished to plead guilty to all of the charges against him except for the charges of attempt to disarm an officer and attempted possession of a firearm by an inmate. The petitioner acknowledged that he committed the other crimes and stated that he wished to accept full responsibility because he had not shown mercy to the victim and that he did not want mercy shown to him. The circuit court questioned the petitioner extensively to determine whether his pleas were knowing and voluntary and, thereafter, accepted the petitioner's guilty pleas to first degree murder, kidnaping, attempted kidnaping, burglary, destruction of property, attempted escape, and domestic assault. The circuit court then ordered a pre-sentence investigation.

At the August 2, 2010, sentencing hearing, the circuit court granted the State's motion to *nolle prosequi* the two charges of attempt to disarm an officer and attempted possession of a firearm by an inmate. The petitioner was sentenced to: life without mercy for first degree murder; life without mercy for kidnaping; three to fifteen years for his conviction of attempted kidnaping; one to fifteen years for his conviction of burglary; one to ten years upon his conviction of destruction of property; six months upon his conviction of domestic assault; and five years upon his conviction of attempted escape. The petitioner was then appointed new counsel for purposes of this direct appeal.

## II.

### STANDARD OF REVIEW

The petitioner sets forth four assignments of alleged error. The more specific standards of review applicable to each as-

signment of error will be incorporated into the discussion below. As a general matter, though, "[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syllabus Point 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995). This Court has also indicated that a circuit court's final order and ultimate disposition are reviewed under the abuse of discretion standard. Syllabus Point 1, *State ex rel. Hechler v. Christian Action Network*, 201 W.Va. 71, 491 S.E.2d 618 (1997).

## III.

### DISCUSSION

The petitioner presents four assignments of error. Each alleged error will be discussed below.

#### A. *Voluntary Guilty Pleas*

█ The petitioner asserts that his guilty pleas were not entered knowingly, intelligently, and voluntarily. According to the petitioner, he took a number of powerful anti-psychotic medications that "could very easily [have] affected his competency to understand the proceedings against him." The petitioner also asserts that he pled guilty out of "selflessness and self-preservation." He says he explained to the circuit court that when he entered his guilty pleas, he was essentially being tortured by police officers and correctional officers while housed in the regional jail system. According to the petitioner, while he was at the regional jail, his cell door was kicked open in the middle of the night and that he was occasionally denied food and prescribed medication. The petitioner also points out that he was shot during his attempted escape. He says that there were other events that made his life difficult at the regional jail and as a result, he pled guilty to the charges against him so that he could get out of the regional jail system. The petitioner concludes that given the backdrop of constant coercion, his plea of guilty to the charged offenses was not given knowingly, voluntarily, or intelligently.

The State argues, however, that the circuit court did not err in accepting the petitioner's guilty plea. The State points out that a defendant may knowingly and intelligently waive constitutional rights and once he does so he cannot be heard to complain thereafter. The State notes that as early as October 1, 2009, the petitioner was demanding to represent himself and accept responsibility for his crimes. According to the State, the petitioner also stated at the April and June 2010 hearings that he had a long time to think about it, had discussed it with his parents, and took full responsibility for his actions. The State also maintains that the petitioner had the opportunity to confer with counsel, and was advised fully by such counsel of the risks and potential consequences of self-representation.

█ This Court has explained that a plea agreement is subject to the principles of contract law insofar as its application insures that a defendant receives that to which he or she is reasonably entitled. In *State ex rel. Gardner v. West Virginia Division of Corrections*, 210 W.Va. 783, 786, 559 S.E.2d 929, 932 (2002), this Court explained:

We have recognized that "[a]s a matter of criminal jurisprudence, a plea agreement is subject to principles of contract law insofar as its application insures a defendant receives that to which he is reasonably entitled." *State ex rel. Brewer v. Starcher*, 195 W.Va. 185, 192, 465 S.E.2d 185, 192 (1995). Such agreements require "ordinary contract principles to be supplemented with a concern that the bargaining and execution process does not violate the defendant's right to fundamental fairness[.]" *State v. Myers*, 204 W.Va. 449, 458, 513 S.E.2d 676, 685 (1998).

Likewise, "[w]hen a defendant enters into a valid plea agreement with the State that is accepted by the trial court, an enforceable 'right' inures to both the State and the defendant not to have the terms of the plea agreement breached by either party." Syllabus Point 4, *State v. Myers*, 204 W.Va. 449, 513 S.E.2d 676 (1998). *See State ex rel. Gray v. McClure*, 161 W.Va. 488, 492, 242 S.E.2d 704, 707 (1978) ("The rule we follow . . . is that a prosecuting attorney . . . is bound to the *terms of a plea agreement once the defendant enters a plea of guilty or otherwise acts*

to his substantial *detriment in reliance thereon.*") (emphasis in original). Moreover, Rule 11(d) of the West Virginia Rules of Criminal Procedure provides:

> Ensuring That the Plea Is Voluntary. The court shall not accept a plea of guilty or nolo contendere without first, by addressing the defendant personally in open court, determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement. The court shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the attorney for the state and the defendant or the defendant's attorney.

In this case, the petitioner is not claiming that the State breached his plea agreement. Instead, his argument is that he did not knowingly, voluntarily, and intelligently enter into the plea agreement due to alleged harassment while incarcerated in the regional jail. Upon reviewing the record in its entirety, it is clear to this Court that the petitioner did knowingly, voluntarily, and intelligently enter into a valid plea agreement.

■ The record reflects that the circuit court engaged in a long colloquy with the petitioner and abided by the requirements of due process before concluding that the petitioner knowingly and intelligently waived his rights and that his pleas were voluntary. The circuit court also considered the psychiatric evaluations that were conducted on the petitioner prior to finding that he was competent to stand trial and accept criminal responsibility.[2] The circuit court stated:

> The record can reflect that psychological evaluations were performed showing that there was no incompetency, no impediment to criminal responsibility nor anything that would lead the Court to believe that the Defendant is not competent to represent himself from a mental competency matter.

The circuit court then went through an exhaustive list of questions prior to accepting the petitioner's guilty plea and during the questioning, the petitioner acknowledged that he understood he had the right to an attorney at every stage of the proceedings, and one could be appointed for him, but that he was choosing to represent himself. The petitioner stated that he understood he had the right to plead guilty or not guilty and persist in that plea, the right to a trial by jury and the assistance of counsel for that trial, the right to confront and cross-examine adverse witnesses, the right to not self-incriminate, and the right to call witnesses. The petitioner also said he understood that if the circuit court accepted his guilty plea, there would not be a trial and that he knew he was waiving his right to such trial. He stated that any of the statements he made surrounding his plea to the circuit court could be used adversely against him both civilly and criminally. The record further demonstrates that the circuit court thoroughly discussed each of these matters and rights and that the circuit court was in compliance with the applicable rules of criminal procedure.

The record also reflects that it was the petitioner himself who initiated the topic of pleading guilty to the offenses. The petitioner stated to the circuit court during the June 25, 2010, hearing, that he wanted to "make it clear to the Court and to the prosecutor right now that I do not—I'm not asking for any mercy, I'm not asking for anything. I want to plead guilty to all my charges." He further explained that:

> I've had 13 months to think about it and to talk to my parents and just to really think about what went on and everything. I take full responsibility. There's no question about it. I have five families that I really hurt. I hurt a community. I hurt four children that I'm not asking for their forgiveness because I know what I did was wrong. My thing is that I just want to get it over with. I'm not asking for mercy from the Court. I'm not asking for a plea bargain. I'm not asking for nothing. I know that I will probably spend the rest of my life in prison. I have no problem for

---

**2.** " 'The test for mental competency to stand trial and the test for mental competency to plead guilty are the same.' Syllabus Point 2, *State v. Cheshire,* 170 W.Va. 217, 292 S.E.2d 628 (1982)." Syllabus Point 4, *State v. Chapman,* 210 W.Va. 292, 557 S.E.2d 346 (2001).

that because I took away someone ... that I did care about.

The petitioner later explained: "What I'm trying to say is that I didn't show mercy, I'm not asking for mercy."

During further questioning by the circuit court at the same hearing, the following discussion occurred between the circuit court and the petitioner:

THE COURT: Now, throughout this prosecution you've had the benefit of Ms. Lawson and Mr. Adams, and have you discussed everything about that and discussed—have they discussed with you your options?

DEFENDANT: Options?

THE COURT: In regards to going to trial and not going to trial, things like that?

DEFENDANT: Yes.

THE COURT: And have they discussed with you and advised you kind of what we've gone through today, what the penalties could be for any of these offenses?

DEFENDANT: Yes.

THE COURT: And has any person suggested to you or promised you any reduced sentence or any set sentence to get you to come in here and plead guilty today?

DEFENDANT: No, sir.

THE COURT: Has anybody made any types of representation that by pleading guilty things may go easier on you or that things could change in the future and you could be let out if you were given a life sentence or anything like that? Like probation, parole, anything like that? Has anybody promised you that that would happen? Say go in there and plead guilty and we'll get you mercy or anything like that?

DEFENDANT: No, sir, Your Honor.

THE COURT: And, in fact, has anybody made any representations or promises to you in any way to get you to come in here and plead guilty today?

. . . .

DEFENDANT: No. That's why I said it in the beginning, Your Honor, I didn't show mercy, I'm not asking for mercy.

THE COURT: Right, but I just want to make sure nobody is tricking you into coming in here and pleading guilty.

DEFENDANT: No, sir.

. . . .

DEFENDANT: Okay, what I want to say to get clear is that I did it, I will take responsibility. I did the crime.

A thorough reading of the transcript of the June 25, 2010, hearing shows that the petitioner's guilty pleas were entered into knowingly, intelligently, and voluntarily. There is nothing in the record to support the petitioner's complaints about the regional jail system affecting the voluntariness of his guilty pleas. To the contrary, the petitioner's standby counsel told the circuit court that she was familiar with issues that had arisen while the petitioner was at the Eastern Regional and Tygart Valley Regional jails, and that "there were administrative reasons for acts that were undertaken" at those jails. His counsel further explained that "there were some provisions in the state regulations and the internal handbooks of those institutions that appear to have been followed as much as [the petitioner] dislikes them." His standby counsel further stated that after the petitioner's complaints, he had been moved to the Northern Regional Jail and that she was not aware of any problems the petitioner was having while being incarcerated at that facility. The record as well as the statements from the petitioner's standby counsel indicate that the reasons for the petitioner's restrictions in jail were due to his attempted escape and his subsequent behavior while incarcerated.

The fact that the petitioner wanted to voice his displeasure with the various regional jails where he was incarcerated after stabbing and killing his ex-girlfriend does not invalidate the voluntariness of his guilty pleas. Moreover, none of the allegations complained of below or within the petitioner's briefs herein are corroborated by any evidence in the record before this Court. The record does, however, show that the petitioner clearly stated to the circuit court that he was pleading guilty because he was guilty and wanted to accept responsibility for the murder of the victim. It further shows that the

petitioner's pleas were made with the full understanding of the charges against him, the consequences of pleading guilty to those charges, and a knowing waiver of his rights, of which he was fully informed and understood. In consideration of all of the above, the circuit court did not abuse its discretion in finding that the petitioner's guilty pleas were knowingly, intelligently, and voluntarily given.

### B. Sixth Amendment Right to Counsel

The petitioner next contends that the circuit court erred by ruling that he voluntarily, knowingly, and intelligently waived his sixth amendment right to counsel.[3] Again, the petitioner asserts that his actions were predicated upon self-preservation. In other words, he says that he chose to represent himself to expedite his convictions in order to get out of the regional jail system. He contends that having legal counsel carried the danger of drawn out proceedings that would delay his release from the regional jails. The petitioner now argues that because of the way he was treated in the regional jail system, he did not cognizantly waive his right to counsel and that the hybrid version of standby representation that he received was no substitute for his sixth amendment rights.

To the contrary, the State maintains that there was no violation of the petitioner's sixth amendment rights. The State points out that the petitioner made repeated, timely, and unequivocal requests that he be allowed to represent himself. The State also explains that the right of self-representation is guaranteed by West Virginia Constitution Article III, § 14[4] and that the petitioner made a knowing, intelligent, and voluntary decision to proceed with his case in such a manner.

It has long been recognized that "[t]he right of self-representation is a correlative of the right to assistance of counsel guaranteed by article III, section 14 of the West Virginia Constitution." Syllabus Point 7, *State v. Sheppard*, 172 W.Va. 656, 310 S.E.2d 173 (1983). Moreover, "[a] person accused of a crime may waive his constitutional right to assistance of counsel and his constitutional right to trial by jury, if such waivers are made intelligently and understandingly." Syllabus Point 5, *State ex rel. Powers v. Boles*, 149 W.Va. 6, 138 S.E.2d 159 (1964). In *Sheppard*, this Court explained that while an accused could exercise his right to self-representation, the right was subject to reasonable restrictions. In Syllabus Point 8 of *Sheppard*, this Court held that:

A defendant in a criminal proceeding who is mentally competent and *sui juris*, has a constitutional right to appear and defend in person without the assistance of counsel, provided that (1) he voices his desire to represent himself in a timely and unequivocal manner; (2) he elects to do so with full knowledge and understanding of his rights and of the risks involved in self-representation; and (3) he exercises the right in a manner which does not disrupt or create undue delay at trial.

In Syllabus Point 2, *State v. Sandler*, 175 W.Va. 572, 336 S.E.2d 535 (1985), this Court further held that:

"The determination of whether an accused has knowingly and intelligently elected to proceed without the assistance of counsel depends on the facts and circumstances of the case. The test in such cases is not the wisdom of the accused's decision to represent himself or its effect upon the expeditious administration of jus-

---

**3.** The right to counsel is guaranteed under both "Section 14 of Article III of the West Virginia Constitution and the Sixth Amendment to the United States Constitution[.]" Syllabus Point 6, in part, *State ex rel. Daniel v. Legursky*, 195 W.Va. 314, 465 S.E.2d 416 (1995).

**4.** W.Va. Const. Art. III, § 14, provides:
Trials of crimes, and of misdemeanors, unless herein otherwise provided, shall be by a jury of twelve men, public, without unreasonable delay, and in the county where the alleged

offence was committed, unless upon petition of the accused, and for good cause shown, *it is* removed to some other county. In all such trials, the accused shall be fully and plainly informed of the character and cause of the accusation, and be confronted with the witnesses against him, and shall have the assistance of counsel, and a reasonable time to prepare for his defence; and there shall be awarded to him compulsory process for obtaining witnesses in his favor.

tice, but, rather, whether the defendant is aware of the dangers of self-representation and clearly intends to waive the rights he relinquishes by electing to proceed pro se." *State v. Sheppard,* [172] W.Va. [656, 671], 310 S.E.2d 173, 188 (1983) (citations omitted).

Equally important,

When an accused chooses to proceed without the assistance of counsel, the preferred procedure is for the trial court to warn the accused of the dangers and disadvantages of self-representation and to make inquiries to assess whether the accused's choice is knowing, intelligent and voluntary. In the absence of such a colloquy, a conviction may be sustained only if the totality of the record demonstrates that the accused actually understood his right to counsel, understood the difficulties of self-representation, and still knowingly and intelligently chose to exercise the right to self-representation.

Syllabus Point 7, *State v. Sandor,* 218 W.Va. 469, 624 S.E.2d 906 (2005). This Court has also found that "[a] judge's decision to allow an accused to exercise his right to self-representation is reviewed under an abuse of discretion standard." Syllabus Point 1, *Sandor.*

█ After a careful review of the record, it cannot be said that the circuit court abused its discretion in allowing the petitioner to proceed with his guilty pleas without the assistance of counsel. At the outset, the record clearly reflects that on numerous occasions, the petitioner was advised by the circuit court and by his appointed counsel and then standby counsel, that he had a right to the assistance of counsel on his underlying criminal charges. The record further reflects that the petitioner intelligently, knowingly, and voluntarily informed the circuit court that he wished to proceed without counsel. Further, two standby counsel were present throughout the proceedings, the petitioner was given the opportunity to confer with them, and did confer with them on more than one occasion.

The record contains a detailed colloquy between the circuit court and the petitioner concerning the petitioner's right to counsel and right to self-representation. While the petitioner was initially appointed counsel, he repeatedly and explicitly requested that he be permitted to represent himself. Nonetheless, while the circuit court allowed the petitioner to represent himself, the court ordered his previously appointed counsel to become his standby counsel to assist him throughout the legal proceedings against him. Moreover, as discussed previously, the record does not contain any evidence of mistreatment of the petitioner by correctional officers while he was incarcerated. The record does, however, contain the petitioner's unequivocal request for self-representation and his firmly stated desire to take responsibility for his actions.

In sum, the record is clear that the petitioner actually understood his right to counsel, understood the difficulties of self-representation, and still knowingly, voluntarily, and intelligently chose to exercise the right to self-representation in this case. The circuit court followed the directives set forth in *Sheppard, supra,* and *Sandor, supra,* before allowing the petitioner to represent himself. The circuit court made this decision only after conducting a lengthy and thorough discussion with the petitioner about the rights and risks of self-representation. The circuit court then appointed standby counsel to assist the petitioner to answer any questions he may have had before answering the circuit court's questions during the plea colloquy. In consideration of all of the above, there is nothing in the record to suggest that the circuit court abused its discretion in granting the petitioner's request for self-representation.

### C. Disproportionate Sentence

█ The petitioner states that his sentence was disproportionate and excessive. The petitioner contends that his lack of counsel and inability to understand the proceedings prevented him from effectively representing his own interests. He states that he did not have witnesses, experts, or lawyers, which led to a lack of mitigating evidence being presented on his behalf. The petitioner argues that his sentences should run concurrently or otherwise be modified as this Court sees fit.

Conversely, the State argues that the circuit court imposed sentences that were squarely within the statutory guidelines. The State also notes that the petitioner asked the court to show no mercy in his sentencing because he had shown no mercy in his commission of the crimes. The State points out that the circuit court considered the victim impact statements, the petitioner's request to plead guilty, the State's argument, and the pre-sentence report including the petitioner's prior criminal history, all of which demonstrated that the petitioner posed a monumental risk to public safety. The State maintains that given the brutality and calculated coldness of the kidnaping and murder, and the petitioner's attempted escape from custody, the circuit court properly imposed the statutory sentences to run consecutively.

 It is undisputed that the sentence imposed upon the petitioner by the circuit court was within the statutory limits. It is firmly established that "[s]entences imposed by the trial court, if within statutory limits and if not based on some [im]permissible factor, are not subject to appellate review." Syllabus Point 4, *State v. Goodnight*, 169 W.Va. 366, 287 S.E.2d 504 (1982). Moreover, Syllabus Point 1 of *State v. Lucas*, 201 W.Va. 271, 496 S.E.2d 221 (1997), holds: "The Supreme Court of Appeals reviews sentencing orders, including orders of restitution made in connection with a defendant's sentencing, under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands." Furthermore, in *State v. Sugg*, 193 W.Va. 388, 406, 456 S.E.2d 469, 487 (1995), we held that "[a]s a general proposition, we will not disturb a sentence following a criminal conviction if it falls within the range of what is permitted under the statute."

Here, the petitioner was indicted for first degree murder, kidnaping, attempted kidnaping, burglary, destruction of property, attempted escape, attempt to disarm an officer, attempted possession of a firearm by an inmate, and domestic assault. He was initially appointed counsel. He knowingly, intelligently, and voluntarily elected to proceed without counsel. He then had the benefit of standby counsel-which he utilized numerous times during his plea hearing. The petitioner then knowingly, intelligently, and voluntarily entered into guilty pleas to all of the charges against him except for attempt to disarm an officer and attempted possession of a firearm by an inmate. As stated, the sentence imposed for his crimes was within statutory limits and was not based upon any impermissible factor. As this Court has stated many times, it is not the proper prerogative of this Court to substitute its judgment for that of the circuit court on sentencing matters, so long as the appellant's sentence was within the statutory limits, was not based upon any impermissible factors, and did not violate constitutional principles. As such, the decision of the circuit court in the case at hand is "protected by the parameters of sound discretion." *State v. Shingleton*, 222 W.Va. 647, 652, 671 S.E.2d 478, 483 (2008). Accordingly, the petitioner's claim that his sentence was disproportionate and excessive is without merit.

### D. Ineffective Assistance of Standby Counsel

The petitioner states that he received ineffective assistance of standby counsel. In that regard, he claims that he sent a letter to his counsel in an effort to request their professional services because he wished to undergo another psychological evaluation for purposes of sentencing. The petitioner says that his standby counsel merely sent him a sample form and instructions on how to file the requisite paperwork. The petitioner maintains that he was unable to do so because of his incarceration.

In response, the State points out that this is a direct appeal and that this Court generally refuses to address allegations of ineffective assistance raised for the first time on direct appeal. The State asserts that a criminal defendant who elects to represent himself cannot thereafter claim that his own inadequacies amounted to the denial of the effective assistance of counsel.

 As noted by the State, this Court's ability to review a claim of ineffective assistance of counsel is limited on direct appeal. Generally such claims are developed in

a petition for writ of habeas corpus. *See* Syllabus Point 11, *State v. Garrett*, 195 W.Va. 630, 634, 466 S.E.2d 481, 485 (1995). Nonetheless, this Court has reviewed the petitioner's claim of ineffective assistance of standby counsel and finds nothing in the record to support such an allegation.[5]

This Court previously considered the issue of ineffective assistance of standby counsel in the case of *State v. Layton*, 189 W.Va. 470, 432 S.E.2d 740 (1993). Like the petitioner herein, the defendant in that case had also chosen to proceed with limited assistance of standby counsel. This Court rejected the defendant's claim, quoting with approval the following language: " 'To prevail on a claim that counsel acting in an advisory or other limited capacity has rendered ineffective assistance, a self-represented defendant must show that counsel failed to perform competently *within the limited scope of the duties assigned to or assumed by counsel*.' " 189 W.Va. at 486, 432 S.E.2d at 756 (quoting *People v. Bloom*, 48 Cal.3d 1194, 259 Cal. Rptr. 669, 688–89, 774 P.2d 698, 717–18 (1989)) (emphasis in original). This Court further noted that:

> Defendants who have elected self-representation may not thereafter seek reversal of their convictions on the ground that their own efforts were inadequate and amounted to a denial of effective assistance of counsel. (*Faretta [v. California]*, *supra*, 422 U.S. 806, 834–835, fn. 46, 95 S.Ct. 2525, 2541, fn. 46 [45 L.Ed.2d 562 (1975)].) This rule applies whether or not the self-represented defendant has been assisted by an attorney acting as advisory counsel or in some other limited capacity. (*See Mullins v. Lavoie* (1982) 249 Ga. 411, 290 S.E.2d 472, 474; *Carter v. State*, (Ind.1987) 512 N.E.2d 158, 163–164; *State v. Hutchison* (Iowa 1983) 341 N.W.2d 33, 42; *Parren v. State, supra*, 309 Md. 260, 523 A.2d 597, 599 [ (1987) ]; *State v. Harper* (Mo.App. 1982) 637 S.W.2d 170, 173–174.).... A

self-represented defendant may not claim ineffective assistance on account of counsel's omission to perform an act within the scope of duties the defendant voluntarily undertook to perform personally at trial. 189 W.Va. at 486, 432 S.E.2d at 756.

■ In this case, the petitioner has failed to show that either of the two public defenders appointed to act as his standby counsel were ineffective in any way or failed to perform competently within the limited scope of the duties assigned to or assumed by counsel. Rather, the petitioner's assertion lacks reasonable specificity and particularity and is without any analysis, explanation, or relevant legal citation. While the petitioner claims that his counsel failed to help him request an additional psychological evaluation, the letter he references was not included in the record submitted to this Court. Consequently, we are precluded from reviewing the precise merits of this issue.

■ This Court has explained that "[t]he responsibility and burden of designating the record is on the parties, and appellate review must be limited to those issues which appear in the record presented to this Court." Syllabus Point 6, *In re Michael Ray T.*, 206 W.Va. 434, 525 S.E.2d 315 (1999). In *State Department Of Health v. Robert Morris N.*, 195 W.Va. 759, 765, 466 S.E.2d 827, 833 (1995), "[a] skeletal 'argument,' really nothing more than an assertion, does not preserve a claim.... Judges are not like pigs, hunting for truffles buried in briefs." (Citation omitted). Moreover, as we held in Syllabus Point 2 of *WV Department of Health & Human Resources Employees Federal Credit Union v. Tennant*, 215 W.Va. 387, 599 S.E.2d 810 (2004), " '[a]n appellant must carry the burden of showing error in the judgment of which he complains. This Court will not reverse the judgment of a trial court unless error affirmatively appears from the record. Error will not be presumed, all presumptions being in favor of the correct-

---

**5.** In Syllabus Point 5 of *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995), this Court provided: "In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance

was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." In this case, however, the issue surrounds the effectiveness of the petitioner's standby counsel.

ness of the judgment.' Syllabus Point 5, *Morgan v. Price*, 151 W.Va. 158, 150 S.E.2d 897 (1966)."

In sum, based upon the review of the record submitted to this Court, there is no merit to the petitioner's claim of ineffective assistance of standby counsel.

## IV.

## CONCLUSION

For the reasons stated above, this Court affirms the decision of the Circuit Court of Berkeley County entered on August 5, 2010.

Affirmed.