IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2013 Term

FILED

October 2, 2013

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 11-1496

STATE OF WEST VIRGINIA,
Plaintiff Below, Respondent

v.

DARRELL K. DAVIS,
Defendant Below, Petitioner

Appeal from the Circuit Court of Mingo County
Honorable Michael Thornsbury
Criminal Action No. 11-F-2

AFFIRMED

Submitted: September 10, 2013
Filed: October 2, 2013

Steve A. Baker, Esq.                          C. Michael Sparks, Esq.
E. Lavoyd Morgan, Jr., Esq.                   Mingo County Prosecuting
E. Lavoyd Morgan, Jr. & Associates            Attorney's Office
Lewisburg, West Virginia                      Williamson, West Virginia
Attorneys for Petitioner                      Attorney for Respondent

The Opinion of the Court was delivered PER CURIAM.

**SYLLABUS BY THE COURT**

1.  "'A judge's decision to allow an accused to exercise his right to self-representation is reviewed under an abuse of discretion standard.' Syl. Pt. 1, *State v. Sandor*, 218 W.Va. 469, 624 S.E.2d 906 (2005)." Syl. Pt. 8, *State v. Surber*, 228 W.Va. 621, 723 S.E.2d 851 (2012).

2.  "The right of self-representation is a correlative of the right to assistance of counsel guaranteed by article III, section 14 of the West Virginia Constitution." Syl. Pt. 7, *State v. Sheppard*, 172 W.Va. 656, 310 S.E.2d 173 (1983).

3.  "'A person accused of a crime may waive his constitutional right to assistance of counsel and his constitutional right to trial by jury, if such waivers are made intelligently and understandingly.' Syllabus Point 5, *State ex rel. Powers v. Boles*, 149 W.Va. 6, 138 S.E.2d 159 (1964)." Syl. Pt. 4, *State v. Surber*, 228 W.Va. 621, 723 S.E.2d 851 (2012).

4.  "'A defendant in a criminal proceeding who is mentally competent and *sui juris*, has a constitutional right to appear and defend in person without the assistance of counsel, provided that (1) he voices his desire to represent himself in a timely and unequivocal manner; (2) he elects to do so with full knowledge and understanding of his rights and of the risks involved in self-representation; and (3) he exercises the right in a

i

manner which does not disrupt or create undue delay at trial.'  Syllabus Point 8,  *State v. Sheppard*, 172 W.Va. 656, 310 S.E.2d 173 (1983)."  Syl. Pt. 5, *State v. Surber*, 228 W.Va. 621, 723 S.E.2d 851 (2012).

5.     """"The determination of whether an accused has knowingly and intelligently elected to proceed without the assistance of counsel depends on the facts and circumstances of the case.  The test in such cases is not the wisdom of the accused's decision to represent himself or its effect upon the expeditious administration of justice, but, rather, whether the defendant is aware of the dangers of self-representation and clearly intends to waive the rights he relinquishes by electing to proceed *pro se*."  *State v. Sheppard*, [172] W.Va. [656, 671], 310 S.E.2d 173, 188 (1983) (citations omitted).'  Syllabus Point 2, *State v. Sandler*, 175 W.Va. 572, 336 S.E.2d 535 (1985)."  Syl. Pt. 5, *State v. Sandor*, 218 W.Va. 469, 624 S.E.2d 906 (2005).

6.     "'When an accused chooses to proceed without the assistance of counsel, the preferred procedure is for the trial court to warn the accused of the dangers and disadvantages of self-representation and to make inquiries to assess whether the accused's choice is knowing, intelligent and voluntary.  In the absence of such a colloquy, a conviction may be sustained only if the totality of the record demonstrates that the accused actually understood his right to counsel, understood the difficulties of self-representation, and still

ii

knowingly and intelligently chose to exercise the right to self-representation.' Syllabus Point 7, *State v. Sandor*, 218 W.Va. 469, 624 S.E.2d 906 (2005)." Syl. Pt. 7, *State v. Surber*, 228 W.Va. 621, 723 S.E.2d 851 (2012).

Per curiam:

The petitioner, Darrell Keith Davis, appeals his August 11, 2011, convictions by a jury of multiple felonies in the Circuit Court of Mingo County, West Virginia. The petitioner's primary argument on appeal is that the trial court committed error in allowing him to represent himself, thereby depriving him of his constitutional right to assistance of counsel. Upon our consideration of the record in this matter, the briefs and arguments of the parties, and the applicable legal authority, and for the reasons discussed below, we find no error and, accordingly, affirm the petitioner's convictions.

## I. Facts and Procedural Background

On July 31, 2010, the petitioner broke into a cabin on Newsome Ridge, Mingo County, where his wife, Lara Davis, and Gary Newsome were sleeping. After shooting Mr. Newsome in the forehead, the petitioner shot Ms. Davis in the back and then struck her in the head with the butt of his rifle. Before fleeing the scene with Ms. Davis, the petitioner set fire to the cabin while Mr. Newsome was still inside. For approximately five hours, the petitioner drove around while Ms. Davis begged him to take her to a hospital for her life-threatening injuries. The petitioner eventually drove to Fleming County, Kentucky, where his cousin persuaded him to take Ms. Davis to a hospital. The petitioner was later arrested and extradited to West Virginia. He was charged with the first degree murder of Mr. Newsome, the kidnapping and malicious assault of Ms. Davis, arson, and burglary.

1

At the initial arraignment hearing conducted on August 9, 2011, attorney Robert B. Kuenzel was appointed to represent the petitioner. During this hearing, the petitioner entered a plea of not guilty. Thereafter, attorney Diana Carter-Weidel was appointed as counsel for the petitioner in place of Mr. Kuenzel.[1]

At the petitioner's arraignment following his indictment, which was held on January 20, 2011, he waived the reading of the indictment and again entered a plea of not guilty.[2] A scheduling order was entered and a trial date was set for March 29, 2011.

Ms. Weidel appeared on the petitioner's behalf at subsequent hearings held on February 22, March 14, and March 21, 2011. The March 21, 2011, hearing was conducted on the issue of the petitioner's competency to stand trial. During this hearing, a court-ordered mental status evaluation report completed on March 14, 2011, by psychiatrist Ralph S. Smith, Jr., M.D., and psychologist Rosemary Smith, was admitted into evidence.[3] Among

---

[1]The record does not reflect the reason Mr. Kuenzel was no longer the petitioner's appointed counsel.

[2]Although Ms. Weidel had been appointed to represent the petitioner, another attorney, Marsha Webb-Rumora, stood in for Ms. Weidel at the January 20, 2011, arraignment. As discussed more fully below, the petitioner ultimately hired Ms. Rumora and her law firm as standby counsel. *See State v. Powers*, 211 W.Va. 116, 563 S.E.2d 781 (2001) (generally discussing nature and concept of standby counsel).

[3]The March 14, 2011, mental status evaluation report was not made a part of the appellate record; however, the trial court specifically referred to various portions of it during the course of the March 21, 2011, hearing.

other things, the trial court made specific reference to that portion of the report opining that the petitioner "'was able to state the crimes with which he stands charged and the possible penalties therefor[,]'" and that "'[h]e was aware of the roles of various courtroom personnel and knew the purpose of the trial.'"[4] The trial court concluded that the petitioner was competent to stand trial. Also during the March 21, 2011, competency hearing, Ms. Weidel moved for a continuance of the trial date because, *inter alia*, discovery had not yet been completed. The motion for a continuance was granted and the trial was scheduled for April 5, 2011.

At a subsequent hearing conducted on March 28, 2011, Ms. Weidel requested the trial court's permission to obtain a second expert opinion as to the petitioner's competency to stand trial. The trial court granted Ms. Weidel's request. Thereafter, during the course of an April 4, 2011, hearing, Ms. Weidel moved to continue the April 5, 2011, trial date on the ground that the petitioner was not scheduled to undergo the second competency evaluation until April 18, 2011. After fully advising the petitioner, on the record, of his right to a speedy trial within the same term of court as his indictment, the trial court found that the petitioner knowingly and intelligently waived his right to a speedy trial and, thereafter,

---

[4]Additionally, the March 14, 2011, report indicated that the petitioner was dissatisfied with Ms. Weidel; according to the report, "'he does not like his attorney because, "she doesn't work for me," and [he] complained that he had not seen [her] for four months and he had not been provided discovery materials until sometime in January.'"

3

granted the motion for a continuance to allow further psychological testing. The trial was continued to May 24, 2011.

On May 23, 2011, the day before trial was scheduled to begin, Ms. Weidel moved to withdraw as the petitioner's counsel. As grounds for her motion, Ms. Weidel maintained that, during a recent meeting with the petitioner regarding the upcoming trial, the petitioner advised her that "he no longer wanted [her] to represent him and that he no longer had any faith in [her] representation." Ms. Weidel further explained that the petitioner indicated to her that he had "a long list of witnesses he wanted subpoenaed [to testify at trial] but he would not give [her] their names or tell [her] what he wanted them to come testify about." As a result, Ms. Weidel believed "it would be impossible for him [sic] to assist him or to represent him effectively at this point." Upon inquiry of the petitioner by the trial court, the petitioner indicated that he "recommend[ed]" that the trial court grant Ms. Weidel's motion to withdraw, and further affirmed that he and Ms. Weidel had "attorney/client issues" resulting in irreconcilable differences as to the manner in which the petitioner wished to defend his case. The trial court granted Ms. Weidel's motion to withdraw.

Immediately after granting Ms. Weidel's motion to withdraw, the trial court appointed attorney Susan Van Zant as the petitioner's new counsel. However, the petitioner advised the trial court that he wished to represent himself. In response to the petitioner's

4

request, and, indeed, throughout the course of the proceedings in this case, the record reveals that the trial court warned the petitioner of the dangers and disadvantages of self-representation while also recognizing his constitutional right to waive counsel and to represent himself.[5] Given the petitioner's stated desire to proceed *pro se*, the trial court appointed Ms. Van Zant as standby counsel.[6] The trial was continued to August 9, 2011.

At subsequent hearings on May 31 and July 13, 2011, the petitioner reaffirmed his desire to proceed *pro se*. At the July 13, 2011, hearing, forensic psychiatrist Dr. Bobby Miller testified with regard to both the petitioner's competency to stand trial and to represent himself.[7] Consistent with the previous psychological evaluation of March 14, 2011, Dr. Miller opined that the petitioner was competent to stand trial. He further opined that the petitioner has a "'rational [and] factual understanding of the proceedings against him'" and that his "'competence extends to those capacities necessary to represent himself . . . .'" Dr.

[5]More specific facts about the trial court's repeated admonishments in this regard and the petitioner's knowing and intelligent decision to waive his right to counsel and to represent himself will be more fully discussed below.

[6]Ms. Van Zant was not present at the May 23, 2011, hearing when the trial court appointed her as standby counsel. Her first appearance as the petitioner's standby counsel occurred on May 31, 2011.

[7]Dr. Miller conducted the second mental competency evaluation previously requested by the petitioner's former counsel, Ms. Weidel. His report was admitted into evidence at the July 13, 2011, hearing but was not made a part of the record in this appeal. However, during the course of the July 13, 2011, hearing, the trial court read certain findings from the report into the record.

Miller also explained during his testimony adduced at trial that, in his opinion, the petitioner knowingly and intelligently waived his right to counsel. More specifically, he testified that the petitioner has

> the emotional and intellectual and academic capacities to do what would be expect[ed] with him in a court of law and I evaluated him specifically for this, and the answer was yes, he does, so it is my opinion that with respect to [the petitioner] he is competent to waive his right to counsel and that he has done so knowingly and intelligently. . . .

Dr. Miller further testified that the petitioner explained to him that he decided to represent himself because the attorneys appointed by the court had "not been successful in prevailing in such procedures and that since their batting average was zero[,] [the petitioner] couldn't do any worse." The petitioner also criticized the appointed attorneys' "lack of quickness for which they did things you asked them."[8]

During the course of the July 13, 2011, hearing, the petitioner moved to discharge Ms. Van Zant as standby counsel and advised the trial court that he would soon be hiring his own standby counsel with funds provided by members of his family. The trial court granted the motion to discharge Ms. Van Zant and immediately appointed attorney

---

[8]According to Dr. Miller, the petitioner had previously been diagnosed with antisocial personality disorder and, as such, has difficulty with authority. According to Dr. Miller, the petitioner feels "that the rules don't apply to" him. Dr. Miller further opined that the petitioner is a narcissist.

Kathryn Cisco-Sturgell to represent him as standby counsel until such time as new counsel was privately retained.

Thereafter, on July 21, 2011, attorney Marsha Webb-Rumora appeared as the petitioner's standby counsel. The written representation agreement between the petitioner and Ms. Rumora's law firm specifically provided that the firm was retained to "assist" the petitioner; that the petitioner "shall represent myself as my own attorney[;]" that "I shall make all decisions in the defense of my case[;]" that "I shall prepare all pretrial motions and post-trial motions[;]" that "I shall make all objections . . . and . . . all motions during my trial[;]" that "I shall examine all witnesses[;]" that "I shall be responsible for all facets of my trial[;]" and that the law firm "shall be available to assist me and give me direction on the above and shall be available to answer my questions in all matters regarding pretrial, trial and post-trial."

When this matter proceeded to trial, the petitioner conducted the defense's opening argument, examined witnesses, made objections, and otherwise represented himself while requesting assistance from standby counsel on an occasional basis.[9] The record reveals that, to a large degree, the trial court exercised exemplary patience with the petitioner

---

[9]For example, the petitioner consulted standby counsel with regard to whether he would testify during his case-in-chief (he elected not to) and, at the trial court's suggestion, also allowed standby counsel to argue the jury instructions.

7

throughout the trial and that, at various times, assisted him by advising him to put a statement in question form while examining a witness; explained to him how to lay a foundation for testimony about the deceased victim's reputation for violence; and advised him that he could recall a State's witness in his case-in-chief.[10]  Meanwhile, the State's evidence against the petitioner overwhelmingly pointed to the petitioner's guilt.

When it apparently became clear to the petitioner that a conviction was imminent, he began his closing argument by stating,"[T]his was the first time I [have] seen my wife in over a year because I've been locked up in jail because the court refused to give me bail. . . . I did talk to my wife on the phone and we've been writing to each other . . . ." The State immediately objected and the petitioner became increasingly argumentative with the trial court.  He then moved for a mistrial "[o]n the grounds of inadequate counsel, my counsel, for my defense. . . . I can't do it.  I don't know what I'm doing.  I'm mentally confused right now."

The petitioner's motion for mistrial was denied.  Just as the trial court was directing standby counsel to take over the petitioner's closing argument, the petitioner fell

---

[10]Furthermore, when, during his case-in-chief, the petitioner became confused about whether a State's witness was subject to recall and indecisive about whether he would recall another witness, the trial court immediately advised the petitioner that standby counsel could take over the case "anytime they want to.  They can take over from this point forward and finish you[r] case.  I don't have a problem with that."

8

to the floor. Emergency medical personnel immediately evaluated the petitioner in the presence of the trial court and on the record (but outside the presence of the jury). The trial court found the petitioner to have no physical infirmity. However, out of an abundance of caution, the trial court ordered that the petitioner be transported to a local hospital for further evaluation and trial was recessed until he was returned to court later that day. Standby counsel for the petitioner resumed closing argument and the petitioner was convicted of the multiple felonies as described above.

The petitioner's post-trial motions were denied by order entered September 7, 2011. By order entered September 29, 2011, he was sentenced to life in prison without the possibility of parole for the murder and kidnapping convictions, which were ordered to run consecutively. The petitioner's sentences for the convictions of first degree arson (a definite term of ten years), burglary (one to fifteen years), and malicious assault (two to ten years) were ordered to run concurrently with the sentence for the kidnapping conviction. This appeal followed.

## II. Standard of Review

This appeal involves whether the trial court acted properly in allowing the petitioner to represent himself at trial. This Court has previously held that "'[a] judge's decision to allow an accused to exercise his right to self-representation is reviewed under an

abuse of discretion standard.'  Syl. Pt. 1, *State v. Sandor*, 218 W.Va. 469, 624 S.E.2d 906 (2005)."  Syl. Pt. 8, *State v. Surber*, 228 W.Va. 621, 723 S.E.2d 851 (2012).  With this standard in mind, the petitioner's argument will now be considered.

### III.  Discussion

The petitioner's primary assignment of error is that the trial court committed error in allowing him to represent himself, thereby depriving him of his constitutional right to assistance of counsel.  The petitioner argues that the trial court failed to make the petitioner aware of the dangers and disadvantages of self-representation or to make inquiries sufficient to assess whether his decision to proceed *pro se* was knowingly and intelligently made.  The State counters that, based upon the totality of the facts and circumstances, the petitioner was mentally competent to represent himself and knowingly and intelligently chose to waive his right to the assistance of counsel and to represent himself.

It is well settled that an accused has a constitutional right to defend himself without the assistance of counsel: "The right of self-representation is a correlative of the right to assistance of counsel guaranteed by article III, section 14 of the West Virginia Constitution." Syl. Pt. 7, *State v. Sheppard*, 172 W.Va. 656, 661, 310 S.E.2d 173, 178 (1983). Indeed, "'[a] person accused of a crime may waive his constitutional right to assistance of counsel and his constitutional right to trial by jury, if such waivers are made intelligently and

10

understandingly.' Syllabus Point 5, *State ex rel. Powers v. Boles*, 149 W.Va. 6, 138 S.E.2d 159 (1964)." *Surber*, 228 W.Va. at 623, 723 S.E.2d at 855, syl. pt. 4. This Court has previously explained, however, that an accused's right to self-representation is a qualified one. In syllabus point five of *Surber*, this Court held as follows:

> "A defendant in a criminal proceeding who is mentally competent and *sui juris*, has a constitutional right to appear and defend in person without the assistance of counsel, provided that (1) he voices his desire to represent himself in a timely and unequivocal manner; (2) he elects to do so with full knowledge and understanding of his rights and of the risks involved in self-representation; and (3) he exercises the right in a manner which does not disrupt or create undue delay at trial." Syllabus Point 8, *State v. Sheppard*, 172 W.Va. 656, 310 S.E.2d 173 (1983).

228 W.Va. at 623, 723 S.E.2d at 855; *see Sheppard,* 172 W.Va. at 670, 310 S.E.2d at 187 ("[T]he right of self-representation is a qualified right and its exercise is subject to reasonable restrictions designed to further two important considerations: protection of other fundamental rights guaranteed the accused by the Constitution, and protection of the orderly administration of the judicial process.").

Furthermore, in syllabus point five of *State v. Sandor*, 218 W.Va. 469, 472, 624 S.E.2d 906, 909 (2005), this Court held that

> "The determination of whether an accused has knowingly and intelligently elected to proceed without the assistance of counsel depends on the facts and circumstances of the case. The test in such cases is not the wisdom of the accused's decision to represent himself or its effect upon the expeditious

11

administration of justice, but, rather, whether the defendant is aware of the dangers of self-representation and clearly intends to waive the rights he relinquishes by electing to proceed *pro se*." *State v. Sheppard*, [172] W.Va. [656, 671], 310 S.E.2d 173, 188 (1983) (citations omitted). Syllabus Point 2, *State v. Sandler*, 175 W.Va. 572, 336 S.E.2d 535 (1985).

Likewise, we have cautioned that a trial court's inquiry into whether an accused's choice is knowing, intelligent and voluntary should be a calculated one:

1. To ascertain if the defendant is cognizant of and willing to relinquish his right to assistance of counsel.

2. To insure that the accused is aware of the nature, complexity and seriousness of the charges against him and of the possible penalties that might be imposed.

3. To warn the accused of the danger and disadvantages of self-representation. (e.g., that self-representation is almost always detrimental and that he will be subject to all the technical rules of evidence and procedure, the same as if he had been represented by counsel.)

4. To advise the defendant that he waives his right to refuse to testify by going outside the scope of argument and testifying directly to the jury.

5. To make some inquiry into the defendant's intelligence and capacity to appreciate the consequences of his decision.

*Sandor*, 218 W.Va. at 477, 624 S.E.2d at 914 (quoting *Sandler*, 175 W.Va. at 574, 336 S.E.2d at 537); *see also Sheppard*, 172 W.Va. at 670-72, 310 S.E.2d at 187-89.

At the same time, however, we have made clear that a trial court is not required to follow these guidelines as though they were "a sacrosanct litany, and the failure to make

12

inquiry as to any particular topic does not make a reversal of a conviction inevitable."

*Sandor*, 218 W.Va. at 478, 624 S.E.2d at 915. Indeed, "'[t]hese guidelines are not

mandatory.'" *Id*. (quoting *Sandler*, 175 W.Va. at 574, 336 S.E.2d at 537). Rather,

> [t]he goal . . . is that the accused be aware of the right to counsel and the disadvantages of proceeding *pro se*. That awareness can be established, however, without regard to any admonitions or colloquies by the court. "[B]ecause the test [for a valid waiver of the right to counsel] concerns what the accused understood rather than what the court said or understood, explanations are not required."

*Sandor*, 218 W.Va. at 478, 624 S.E.2d at 915 (quoting *United States v. Kimmel*, 672 F.2d 720,

722 (9th Cir. 1982)); *see also Faretta v. California*, 422 U.S. 806, 835 (1975) ("Although a

defendant need not himself have the skill and experience of a lawyer in order competently and

intelligently to choose self-representation, he should be made aware of the dangers and

disadvantages of self-representation, so that the record will establish that 'he knows what he

is doing and his choice is made with eyes open.'" (quoting *Adams v. United States ex rel.*

*McCann*, 317 U.S. 269, 279 (1942)). Therefore, where the record does not contain "a

colloquy regarding the accused's decision to proceed *pro se* . . . appellate courts may proceed

to examine the totality of the circumstances of the case and the background of the accused in

an attempt to assess whether the accused's decision was constitutionally fair." *Sandor*, 218

W.Va. at 478, 624 S.E.2d at 915.

Accordingly, we have held that

13

"[w]hen an accused chooses to proceed without the assistance of counsel, the preferred procedure is for the trial court to warn the accused of the dangers and disadvantages of self-representation and to make inquiries to assess whether the accused's choice is knowing, intelligent and voluntary. In the absence of such a colloquy, a conviction may be sustained only if the totality of the record demonstrates that the accused actually understood his right to counsel, understood the difficulties of self-representation, and still knowingly and intelligently chose to exercise the right to self-representation." Syllabus Point 7, *State v. Sandor*, 218 W.Va. 469, 624 S.E.2d 906 (2005).

*Surber*, 228 W.Va. at 624, 723 S.E.2d at 854, syl. pt. 7.[11]

---

[11]In *Sandor*, this Court explained that its preference for a short and simple colloquy is a practical one:

"Our holding, that a specific on the record warning of the dangers and disadvantages of self-representation is not an absolute necessity in every case for a valid waiver of counsel, should in no way be interpreted as any indication that we disfavor such a policy. Exactly the opposite is true. At best, requiring appellate courts to search through voluminous records for evidence of knowledge of this type is a time-consuming effort and a waste of judicial resources. It is a waste of judicial resources not because it is a frivolous inquiry, but because it could be avoided with a relatively short and simple colloquy on the record. Indeed, such a practice would be better for all parties involved because it would both help prevent error, and it would make frivolous appeals easier to dispose of. Thus, we are hopeful that all courts will voluntarily pursue this practice and that government prosecutors will see the benefit in encouraging courts with other practices to change them."

218 W.Va. at 478 and n.8, 624 S.E.2d at 916 and n.8 (quoting *Meyer v. Sargent*, 854 F.2d 1110, 1115 (5th Cir. 1988).

14

At issue in the case *sub judice* is whether the totality of the record demonstrates that the petitioner understood his right to counsel, appreciated the dangers and disadvantages of waiving that right and representing himself, and still knowingly and intelligently chose to do so. *See Surber*, 228 W.Va. at 624, 723 S.E.2d at 851, syl. pt. 7. The petitioner argues that he did not understand the perils of self representation given that he "proceeded without coherently advancing any theory, despite the availability of several defense theories[;]" was "unable to effectively prepare for his representation" because he was incarcerated; and "failed to understand the significance of key witnesses . . . [which] led to disastrous results . . . ." Thus, the petitioner contends, his waiver of the right to counsel was invalid.

Based upon our careful review of the totality of the record, we conclude that the circuit court did not abuse its discretion in allowing the petitioner to exercise his constitutional right to self representation. Beginning with the petitioner's initial arraignment, the trial court plainly and clearly advised him that he had a right to counsel and, in fact, counsel was appointed to represent him. At a subsequent hearing, the petitioner affirmed that he had a fair and adequate opportunity to read the indictment and that the nature of all charges, the elements of the charged offenses and their penalties were explained to him by his then-appointed counsel, Ms. Weidel. Upon expressing his desire to proceed *pro se*, the petitioner was evaluated by a forensic psychiatrist. Dr. Miller concluded that the petitioner had "the emotional and intellectual and academic capacities to do what would be expect[ed] [of] him

15

in a court of law" and was "competent to waive his right to counsel and that he has done so knowingly and intelligently . . . ."[12]

Thereafter, during the course of proceedings held on May 31, July 13, and July 21, 2011, the petitioner reaffirmed his unequivocal desire to proceed while representing himself. Notwithstanding the petitioner's argument to the contrary, the record demonstrates that on numerous occasions, the trial court warned the petitioner of the dangers and disadvantages of doing so, calling self representation "an ill advised decision;" urging him to "understand the importance of counsel" and to change his mind; and advising him that, in most cases, an accused "certainly would be better served to be with counsel." Furthermore, the trial court repeatedly cautioned the petitioner that he would be required to comply with all court rules and procedures. The petitioner clearly understood this admonition. On one occasion, when the trial court urged the petitioner to consult with standby counsel to ensure the rules were complied with regarding the admission of evidence in his case, the petitioner

---

[12]Dr. Miller also testified that the petitioner stated that one of the reasons he chose to represent himself was that "he believed that if he is convicted and he recognizes that [is] a distinct possibility, that he would prevail in an appeal in something that he called a habeas." However, on the morning of trial, the trial court clearly advised the petitioner as follows: "In most cases people are represented by lawyers and then they can come back later and allege[] ineffective assistance of counsel. You're not going to be able to come back later if you are convicted later [sic] and allege ineffective assistance of counsel because you are your own counsel." The petitioner indicated, without equivocation, that he understood the trial court's warning in this regard.

16

replied, "Yes, sir. Everybody's got to play by the Rules."[13]  On the record, the trial court

found the petitioner to be intelligent and articulate and that he "demonstrated an ability to

cognitively approach this case."[14]  Moreover, standby counsel was present at every

proceeding.  On more than a few occasions, the trial court encouraged the petitioner to confer

with counsel and, in fact, the petitioner did confer with them several times throughout the

trial.

Based upon the foregoing, it is clear that the totality of the facts and

circumstances, as set forth above, reflect that the petitioner understood his constitutional right

to counsel, appreciated the dangers and disadvantages of self representation, and still

---

[13]On another occasion, during the May 31, 2011, hearing, while explaining the concept
of reciprocal discovery to the petitioner, the trial court advised him that he "ha[s] a duty to
comply with the Rules.  Again, that's one of the pitfalls I told you about." The petitioner
clearly responded, "I know that[,]" explaining that "I spent a lot of my teen years in
courtrooms . . . ." Likewise, on the morning of trial, the petitioner requested a pre-trial ruling
regarding the admissibility of certain photographs of the victims and others taken at the
deceased's cabin hours before the crimes herein occurred.  Among other things, the petitioner
intended to show that at least one of the people in the photograph had intended to lure him
to the cabin in order to rob him.  The trial court warned the petitioner that "if you supply
motive to the state thru [sic] your own efforts[,] then that can be utilized in an adverse
fashion against you."  In response, the petitioner stated, "I understand it cuts both ways."

[14]Indeed, the record is replete with evidence that, prior to trial, the petitioner made
numerous motions for the production of certain evidence; for the admission of certain
evidence (such as evidence of the deceased victim's reputation for aggressiveness or
violence); and inquired about how to serve subpoenas on out-of-state witnesses. When the
State indicated to the petitioner that it had previously disclosed DNA test results that the
petitioner requested, the petitioner replied, "I've been in a cell for 24 hours a day.  I've got
nothing to do but to read this case over and over and over and over.  I've got this thing
memorized.  I'm not forgetting, I'm not stupid, so don't treat me like that."

17

knowingly and intelligently chose to represent himself. As we have previously cautioned, "[t]he test . . . is not the wisdom of the [petitioner's] decision to represent himself." *Sandor*, 218 at 472, 624 S.E.2d at 909, syl. pt. 5. Indeed, this Court "need make no assessment of how well or poorly" the petitioner presented his case, "[f]or his technical legal knowledge, as such, was not relevant to an assessment of his knowing exercise of the right to defend himself." *Faretta*, 422 U.S. at 836. Accordingly, we conclude that the trial court did not abuse its discretion in allowing the petitioner to represent himself.[15]

---

[15]The petitioner also assigns as error the fact that the trial court allowed Ms. Weidel, one of his court-appointed lawyers, to withdraw without good cause, and failed to appoint "competent counsel" in her stead. We find the petitioner's argument in this regard to be without merit.

On the record, Ms. Weidel made clear her reasons for requesting to withdraw as the petitioner's counsel. The record reflects that, from the beginning, the petitioner was dissatisfied with Ms. Weidel and uncooperative with her efforts to represent him. Although, in *Watson v. Black*, 161 W.Va. 46, 239 S.E.2d 664 (1977), this Court indicated that a trial court "should conduct a hearing . . . to determine whether good cause exists to discharge a court-appointed counsel and appoint another[,]" such a hearing is not mandatory. 161 W.Va. at 47, 239 S.E.2d at 665, syl. pt. 3. In the present case, it was abundantly clear that no counsel appointed by the trial court would have met with the petitioner's approval. As the petitioner stated more than once, they "don't work for me." Indeed, only moments after Ms. Weidel was permitted to withdraw and Ms. Van Zant was appointed, the petitioner announced to the trial court that he intended to represent himself. Furthermore, the petitioner then affirmatively set out to hire his own standby counsel with whom it was agreed that the petitioner would "make all decisions" and be "responsible for all facets of [his] trial." Based upon these facts, we conclude that the trial court did not abuse its discretion in allowing Ms. Weidel to withdraw as the petitioner's counsel.

Finally, the petitioner argues that the trial court erred in failing to articulate the scope of representation of appointed standby counsel, Ms. Van Zant, as required by *State v. Powers*, 211 W.Va. 116, 563 S.E.2d 781 (2001). In *Powers*, this Court held that when standby counsel is appointed "to assist a criminal defendant who has been permitted to proceed *pro se*, the circuit court must, on the record at the time of the appointment, advise both counsel and the defendant of the specific duties standby counsel should be prepared to

## IV. Conclusion

In consideration of the foregoing, we find no error and, therefore, affirm the

September 7, 2011, and September 25, 2011, orders of the Circuit Court of Mingo County.

Affirmed.

---

perform." *Id.*, 211 W.Va. at 117, 563 S.E.2d at 782, syl. pt. 2, in relevant part. The record before us is clear that during Ms. Van Zant's first appearance as the petitioner's standby counsel, the trial court clarified her role as follows: "If he wants you to assist him he will ask for it. You are to affirmatively do nothing unless he asks for it." The trial court reiterated the scope of Ms. Van Zant's duties several times throughout the course of the proceedings. Although Ms. Van Zant indicated that she preferred to be lead counsel and that she explained to the petitioner the importance of counsel especially given that he is incarcerated, she indicated that she understood her role and attempted to carry it out. In consideration of all of the above, we conclude that the trial court properly advised both counsel and the petitioner of Ms. Van Zant's specific duties as standby counsel. Accordingly, we conclude that the petitioner's argument that the trial court committed error in this regard is without merit.